## In re CAMPBELL.

(District Court, W. D. Virginia. August 28, 1903.)

1. BANKRUPTCY—EXEMPTIONS—PROCEDURE AND BURDEN OF PROOF.

In setting apart the property claimed by a bankrupt as exempt, after its appraisal, the trustee acts ministerially; and no issue as to the bankrupt's right to the exemption arises until the trustee's report is filed, when issue may be taken by exceptions thereto which cast the burden of proving all facts essential to the right upon the bankrupt, including, where the exemption is claimed under the Virginia statute, the fact that such property was paid for.

2. SAME—CREDITORS HAVING RIGHT TO OBJECT TO ALLOWANCE—VIRGINIA STATUTE.

The Virginia homestead statute, allowing exemptions of real or personal property (Code 1887, § 3630), provides that it shall not extend to any execution or other process issued on any demand for the purchase price of said estate, or any part thereof. *Held*, that under the bankruptcy law, by which the proceeds of nonexempt property are divided pro rata among all creditors, objection to the allowance of a bankrupt's exemption under such statute on the ground that the property claimed has not been paid for may be made by any creditor, without showing that his claim is for the purchase price of any of such property.

124 F.—27

**3. SAME—EXCEPTIONS TO TRUSTEE'S REPORT—VERIFICATION.**

While an exception to the report of a trustee setting apart the bankrupt's exemptions is in some sense a pleading, in that it makes an issue, it is doubtful if it was intended to be embraced within Bankr. Act July 1, 1898, c. 541, § 18c, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429], which requires all pleadings setting up matters of fact to be verified; and in any event the lack of verification is not jurisdictional, and, where not objected to on the hearing before the referee, objection cannot be made on a review of his decision by the court.

**4. SAME—CREDITORS ENTITLED TO OBJECT TO ALLOWANCE OF EXEMPTION.**

In applying in bankruptcy proceedings the Virginia exemption statute, which provides for the exemption of certain property of a debtor "from levy, seizure, garnishment or sale under any execution, order or process," a creditor is not precluded from objecting to the allowance of exemption to a bankrupt because he is not armed with any process; the bankruptcy proceedings themselves being in effect a seizure of all the debtor's property, for the purposes of the state statute.

**5. SAME—PROCEDURE.**

Where, on the hearing before the referee of exceptions to the report of a trustee setting apart the bankrupt's exemptions under the Virginia statute in merchandise, neither the bankrupt nor any creditors holding notes in which the right to the exemption was waived made any proof that the property claimed and set apart was paid for, and the referee decided against the right to the exemption, the cause will not be remanded for the taking of proof on such issue after the merchandise has been sold by agreement of the parties in interest, and delivered to the purchasers.

In Bankruptcy. On review of decision of referee disallowing exemption claimed by bankrupt.

Chas. A. Hammer, for bankrupt.

Roller & Martz, H. W. Bertram, and D. O. Dechert, for nonwaiver creditors.

Conrad & Conrad, for homestead waiver creditors.

McDOWELL, District Judge. This case arises on a petition for review of the ruling of the referee filed by the bankrupt.

On November 15, 1902, C. G. Campbell, a retail dealer in clothing and men's furnishing goods, doing business at Harrisonburg, Va., filed his voluntary petition in bankruptcy. On the same day he was adjudicated a bankrupt. The chief item of assets is the bankrupt's stock in trade, scheduled as of a value, "at cost and carriage," of $2,500. In Schedule B5 is a claim of homestead exemption in the following language:

"Petitioner claims his homestead exemption, allowed by the Constitution of Virginia and the laws made in pursuance thereof, amounting to $2,000, the same to be paid out of the household property above scheduled, and the proceeds of the sale of the stock of goods, and the collections on the accounts and notes above scheduled, as against the debts of the petitioner, except those as to which he has waived his homestead exemption."

On November 20, 1902, the bankrupt had admitted to record in the clerk's office of the county court of his county an attempted deed of homestead, which purports to have been executed on November 14, 1902, in which he claims the said stock of goods, also his household furniture, and all accounts due him. In this instrument there is no attempt at itemizing the articles claimed, or at affixing to each a valuation. On December 17, 1902, the bankrupt had admitted to

record in said county court another deed of homestead, which appears to have been executed on December 13, 1902—the day on which the appraisers under the bankruptcy proceeding made their appraisement of his stock. In this deed the articles claimed are itemized, and a valuation affixed, and in it certain store fixtures are included in the claim. The property listed in the deed of homestead and that set out in the appraisement is as follows:

| Claimed as Exempt. | | Appraisement. | |
|---|---|---|---|
| 128 prs. gloves | $ 26.55 | 128 prs. gloves | $ 20. |
| 548 undershirts | 175.89 | 548 undershirts | 140. |
| 248 workshirts | 88.71 | 246 working shirts | 75. |
| 70 prs. shoes | 81. | 59 prs. shoes | 53.77 |
| 71 prs. overalls | 23.96 | 51 prs. overalls | 20. |
| 373 colored collars | 30.47 | 91 winter underwear — | |
| 50 prs. cuffs | 6.96 | shirts | 30. |
| 221 prs. hose | 43.82 | 373 collars | 23. |
| 54 prs. suspenders | 17.81 | 50 prs. cuffs | 5.75 |
| 7 vests | 3.75 | 221 prs. hose | 20. |
| 23 prs. boys' pants | 32.59 | 49 belts | 8. |
| 63 summer coats | 43.07 | 54 suspenders | 13. |
| 116 men's & youths' suits | 389.58 | 182 bows and ties | 13.50 |
| 149 prs. boys' pants | 46.49 | 7 vests | 3.75 |
| 36 overcoats | 121.50 | 23 prs. boys' pants | 22. |
| 234 boys' suits | 442.13 | 63 summer coats | 31.50 |
| 154 men's & youths' pants | 269.31 | 119 men's & youths' suits | 353.50 |
| 13 stiff hats | 7.61 | 149 boys' pants | 40. |
| 227 felt hats | 101.77 | 35 overcoats | 121. |
| Sundry store fixtures, | | 228 boys' suits | 387.50 |
| including 24 "show | | 154 men's & youths' pants | 205. |
| window stands" | 112.30 | 676 neckties | 69. |
| | | 10 umbrellas | 5.88 |
| Total as stated.. | $1,985.50 | 106 straw hats | 12. |
| | | 13 stiff hats | 7.61 |
| Corrected total.. | $2,065.27 | 129 caps | 15. |
| | | 230 felt hats | 95. |
| | | 5 satchels | 1.50 |
| | | Fixtures | 70. |
| | | Notes | 16.50 |
| | | Accounts | 130.88 |
| | | Total | $2,009.64 |

The trustee allowed the claim of homestead as made by the bankrupt; his report consisting mainly of a carbon copy of the deed of homestead of December 13, 1902. Within the 20 days allowed by general order 17 the creditors hereinbelow mentioned—all holding claims as to which the homestead is not waived—filed exceptions to the report of the trustee. On the hearing the referee ruled that the claim of homestead should be disallowed in toto.

The excepting creditors, and the articles sold by them to the bankrupt, are as follows: Hirsh, Monk & Co., for coats, vests, and pants sold in May and June, 1902; Oppenheimer & Sons, for suspenders sold in March, 1902; Brent, Bull & Co., for merchandise (character not stated), on which demand judgment was obtained October 18, 1902; Valentine & Robinetowitz, for merchandise (character not stated) sold in March and April, 1902; Sullivan & Co., for shirts, drawers, hose, handkerchiefs, collars, etc., sold in April and

June, 1902. One of the nonexcepting creditors is the Wood Display Stand Company, which sent in, apparently by mail, proof of debt for two dozen display stands. It appears from the record that the stock consisted mainly of fall and winter goods. The exceptions filed in behalf of the above-named creditors, except Sullivan & Co., state in the first paragraph that goods sold by the exceptants to the bankrupt, and not paid for, are among the goods set apart to the bankrupt.

The state law (Code 1887, § 3630) allows every resident householder to hold exempt his real or personal estate to the value of $2,000, provided that such exemption shall not extend to any execution, order, or other process issued on any demand for, inter alia, the purchase price of said estate, or any part thereof. Section 3639 of the Code reads:

"How Set Apart in Personal Estate. Such personal estate shall be selected by the householder and set apart in a writing signed by him. He shall, in the writing, designate and describe with reasonable certainty, the estate so selected and set apart and each parcel or article, affixing to each his cash valuation thereof; and the said writing shall be admitted to record, to be recorded as deeds are recorded, in the county or corporation wherein such householder resides."

Section 3647 of the Code allows a waiver of the homestead to be made in any bond, bill, note, or other instrument. Some of the creditors, who do not except, hold homestead waiver notes, or have proved claims for labor and rent which are not subject to the homestead exemption.

On the examination of the bankrupt, he was asked by counsel for some of the creditors if he had not mingled and confused unpaid-for goods with goods that had been paid for. Under the advice of his counsel, he refused to answer the question. No further step was taken by creditors' counsel to require an answer to this question, nor was the referee asked to rule on the point.

Since the hearing before the referee, the trustee, who at the request of the bankrupt sold all the assets, has reported the net proceeds of the sale as being $1,511.42, out of which must come sundry items of cost. The claims of the creditors holding homestead waiver notes, and of those whose claims are not subject to the homestead exemption, amount, exclusive of interest, to something over $1,520. While in the Schedule B5, and in the paper requesting the sale of all the assets, filed December 19, 1902, the bankrupt did not claim the proceeds of sale of the property claimed as exempt, except as to the residue, if any, after payment of his waiver creditors, he subsequently, in argument before the referee and here, claimed for himself the entire proceeds of the property claimed as exempt.

For the purposes of this case, I will assume, without expressing an opinion thereon, that the claim of homestead was made in the proper manner and in due time.

The doctrine of Rose v. Sharpless, 33 Grat. 153, does not here apply, as there is no evidence that the bankrupt removed the marks of identification from the goods, or confused unpaid-for goods with those that had been paid for. I also doubt if this case properly falls

under the ruling in the Case of Tobias (D. C.) 103 Fed. 70. There is here no agreement that some of the articles claimed as exempt had not been paid for, and no evidence of a commingling of goods. The mere refusal of the bankrupt to answer a question on this point, especially as no effort was made to require an answer, cannot be treated as evidence of a commingling of goods. However, I am of opinion that the ruling of the referee should be sustained. Under the Virginia homestead law, the exemption cannot be had in any property against a demand for the purchase price thereof. Const. 1869, art. 11; Code 1887, § 3630. There is no evidence in the record that the articles set apart as exempt had been paid for. The exceptions are designed to put in issue this question, and some of them allege that unpaid-for goods sold by the exceptants to the bankrupt are among the goods set apart to the bankrupt. Perhaps McGahan v. Anderson, 51 C. C. A. 92, 113 Fed. 119, and In re Sykes (D. C.) 106 Fed. 669, are sufficient authority for the conclusion that the burden of proof is on the bankrupt. And it seems to me, in reason, that the burden of proving that the articles claimed as exempt have been paid for should rest on the bankrupt. When he, in a bankruptcy proceeding, in which he seeks a discharge from all his creditors, designates certain articles, and claims them as exempt, he, in effect, alleges that the articles designated have been paid for. He is presumed to know the law, and to know that he cannot exempt any property as against a demand for the purchase price. He must therefore be treated as having impliedly asserted that every article claimed has been paid for. In a voluntary bankruptcy case, the first opportunity that a creditor has to make on the record a denial of the truth of this implied allegation is to except to the report of the trustee, if the trustee sets apart the property. There is no requirement in the bankrupt act that the creditors shall contest the claim of exemption in pais before the trustee. The act seems to contemplate (Act July 1, 1898, c. 541, § 47, cl. 11, 30 Stat. 557 [U. S. Comp. St. 1901, p. 3439]) and general order 17 clearly allows any creditor to make objection by filing exceptions to the trustee's report. When, and not until, such exception has been filed, is an issue made as to the right of the bankrupt to have the exemption. The bankrupt has, in effect, alleged that the property has been paid for. The excepting creditors deny the allegation. The bankrupt has the affirmative of the issue. He is the actor. He is in the position of a plaintiff who asks affirmative relief, in that by his claim of exemption he has asked the court to set apart to him the property claimed to be exempt. Moreover, he best knows the facts. The means of proof are much more readily at his command than at that of any creditor. While the courts should liberally construe exemption laws, yet they will not willingly establish a doctrine by which illegal and unjust exemptions could be readily secured. If the burden of proof were put on the creditors, the result would very frequently be that illegal claims of exemption would avail. The expense, inconvenience, and difficulty of proof by a creditor that certain articles claimed as exempt by a retail dealer were not paid for would be such that in many if not in the majority of cases the creditor would be wise not

to contest the claim of exemption. To hold that the burden of proof is on the creditors is equivalent to holding that the mere claim of homestead creates a presumption that the property claimed as exempt has been paid for. We might as well say, when A. sues B. in assumpsit, and the latter pleads non assumpsit, that the burden is on B. to disprove the claim of the plaintiff.

It may be contended that the action of the trustee in setting apart an article as exempt creates a presumption that such article had been paid for. But the trustee acts as a mere ministerial agent. Ordinarily the creditors do not appear before the trustee. They are allowed to, and I think usually do, wait until the report of the trustee is filed, and then they make their objections by excepting to the report. The bankrupt act requires the trustee to put his own valuation on the property claimed as exempt. And unless the bankrupt should claim a greater value than the state law allows him, the act does not seem to authorize the trustee to exercise any discretion. Having valued the property, his duty is to set it apart and make report. His action is in no sense even a quasi judicial finding that the exemption is properly allowable. There is no issue on this question until exceptions are filed to his report. And on that issue, as above stated, the bankrupt clearly has the affirmative.

It is objected that the exceptions here do not show that the exceptants are the vendors of the articles set apart by the trustee. Some of the exceptants do assert that they are the vendors of a part of the goods set apart. But aside from this, the opinion of the majority of the court in Cannon v. Dexter Broom Co. (C. C. A.) 120 Fed. 657, is in effect a ruling that an exception on this ground may be made by any creditor. General order 17, in terms, allows any creditor to file exceptions. And it seems to me that any creditor should have the right to make the objection, because every creditor shares pro rata in the fund that may by such objection be saved to the estate. Let us suppose that the bankrupt—having given no waiver obligations—owes A., B., and C. for the entire purchase price of a stock of goods which cost $2,000, and that he owes D. $200 for the board and lodging of himself and wife; also that the bankrupt, having no assets except the stock of goods, claims, and the trustee sets apart to him, the stock of goods as a homestead. Under these circumstances, if A., B., and C. except to the report of the trustee, the result is that D. shares pro rata in the proceeds of the sale of the goods. It is clear that D., under the policy and intent of the bankrupt act, has an interest in defeating the bankrupt's claim of homestead; and it cannot be said that A., B., and C. and the bankrupt are alone concerned as to the allowance of the homestead. It is true that under the state law, considered alone, the homestead can be claimed in unpaid-for property as against the claim of every one except that of the vendor. But the bankrupt act, so to speak, consolidates the demands of all the creditors. What is gained for one is gained pro rata for all. The other creditors are in some sense the assignees in part of the claims of the vendor creditors. So far as the bankrupt is concerned, the result is the same whether the objection be made by a vendor creditor or by some other

creditor. And since the other creditors have an interest in the matter, the failure or the refusal of the vendor creditor to file objections to an allowance of homestead should not be allowed to prejudice the rights of the other creditors. It follows that the exceptions in the case at bar would not be vitally defective even if they showed that the exceptants were not the vendors of any of the articles set apart by the trustee. The burden of proof having rested on the bankrupt, and as he offered no evidence tending to show that the articles claimed had been paid for, the referee rightly held that he was not entitled to the exemption.

An objection is made to the ruling of the referee, in that the exceptions to the trustee's report were not verified. This objection does not appear to have been made before the referee. While an exception to a trustee's report is in some sense a pleading, in that it makes an issue, and while such an exception may be treated as a pleading "setting up matters of fact," yet I doubt if Congress, in enacting clause "c" of section 18 of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429]), had the intent to require that exceptions to a trustee's report should be verified. The procedure on reports of trustees setting apart exemptions is not specified in the bankrupt act. In making general order 17, the Supreme Court provided that any creditor might within 20 days after the filing of the trustee's report "take exceptions to the determinations of the trustee." Considering the source of the general orders, and the familiarity of the Supreme Court with the practice as to taking exceptions to reports of masters in chancery, it seems very probable that the intent was that exceptions to a trustee's report should be in the familiar form of exceptions to a master's report. But even if we assume that clause "c" of section 18 applies here, I cannot conceive that the want of verification is jurisdictional, or that it is ground for setting aside the ruling of the referee. If the point had been made before the referee, he could have required the exceptants to verify their exceptions before passing on them. But the point was not made at the hearing before the referee, and cannot be now made in this, in effect, appellate proceeding, for the first time. In re Raynor, Fed. Cas. No. 11,597; In re McNaughton, Fed. Cas. No. 8,912; In re Simmons, Fed. Cas. No. 12,864; In re Simonson (D. C.) 92 Fed. 911; Leidigh Co. v. Stengel, 37 C. C. A. 210, 95 Fed. 641; Green River Bank v. Craig (D. C.) 110 Fed. 138.

I have not overlooked the contention that the excepting creditors have no standing, because they are not armed with executions against the bankrupt. This contention is founded on the language of the state homestead law, "shall hold exempt from levy, seizure, garnishment or sale under any execution, order or process." Under proceedings in bankruptcy the property is in effect seized or levied upon as much in behalf of nonjudgment creditors as of any party in interest. In a voluntary case the debtor surrenders his property, and, when he claims some or all of it as exempt, he is asking that such property be not "sold" under judicial "process," or "order."

It may be thought that this cause should be sent back to the referee, with directions to hear evidence, and determine which, if any,

of the articles claimed as exempt had been paid for. The report of sales of the trustee is very informal, and seems to indicate that no account was kept, showing the price realized for the separate articles claimed as exempt. If such is the case, it is manifest that it would now be impossible to fix at all accurately the part of the proceeds of sale to be set apart, if any of the articles claimed as exempt had in fact been paid for. But even if such account has been kept, it does not seem to me that either the bankrupt or the waiver creditors are in a position to now demand the opportunity to produce evidence which it was their duty to produce at the former hearing before the referee. They have had their "day in court." While the articles claimed as exempt were still in the possession of the trustee, a mistaken or false claim could have been rebutted; but now, since all the assets have been sold and delivered to the purchasers, the non-waiver creditors would not have a fair opportunity to rebut the evidence of the bankrupt. Moreover, the bankrupt alone has appealed from the ruling of the referee. If, under the doctrine of Moran v. King, 49 C. C. A. 578, 111 Fed. 730, the homestead were allowable in this case, and if any part of the proceeds of the sale of the exempt articles would eventually go to the bankrupt after satisfying the claims of his waiver creditors (Lockwood v. Exchange Bank, 23 Sup. Ct. 751, 47 L. Ed. ——), it is manifest that such sum would be very small. The claims of the waiver creditors slightly exceed the proceeds of the sale of all the assets. Even assuming that practically all the articles claimed as exempt had been paid for, and considering that the claims of the waiver creditors will be slightly reduced by their pro rata of the proceeds of sale of the assets other than those claimed as exempt, still any possible remnant left to be paid to the bankrupt as exempt is necessarily trifling in amount. For the assets, aside from the articles claimed as exempt, amount to very little, and the property was sold at considerably less than the appraised value. In other words, the interest of the bankrupt in the proceeds is de minimis. It is certainly too small to justify an order allowing him to now make proof as to which, if any, of the articles claimed, had been paid for, even if it were otherwise proper to make such order.

The ruling of the referee will be approved and confirmed.