## MORAN v. KING et al.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1901.)

No. 398.

BANKRUPTCY—EXEMPTIONS—PERMITTING AMENDED CLAIM.

A bankrupt, who, at the time of filing of his schedules, claims certain property as exempt under the constitution and statute of Virginia, which permit, but do not require, him to select property to the value of $2,000 as a homestead exemption, cannot be allowed to amend his schedule, and claim additional property or its proceeds, after title to the same has vested in his trustee; and especially will such additional claim be denied where it is not made for the purpose contemplated by the exemption law, but avowedly for the purpose of preferring certain creditors to whom the bankrupt had given notes in which he waived his exemption privilege.

Petition for Revision of Proceedings of the District Court of the United States for the Western District of Virginia, in Bankruptcy.

On the 2d of March, 1900, certain creditors of W. G. Moran, a citizen of the state of Virginia, duly filed their petition in the court of bankruptcy for the Western district of Virginia, asking that said Moran be declared an involuntary bankrupt by reason of alleged preferences to other creditors, and on the 16th of March, 1900, an order was entered adjudicating said Moran an involuntary bankrupt. Previous to the proceedings in bankruptcy, the said Moran, on the 3d day of February, 1900, executed a deed of trust, which on its face was a general assignment, in which he preferred the People's National Bank of Charlottesville, Va., for a debt of $400, and it was for reason of this preference that the bankruptcy proceedings were instituted, and Moran adjudged a bankrupt. Moran had also, on the 24th of November, 1899, executed a deed of trust upon certain of his property, wherein he preferred one of his creditors, J. D. Smith, for the sum of $900. Within 10 days after the order of adjudication, the bankrupt filed a schedule of his creditors and effects, and in said schedule he made his claim for exemptions under the laws of Virginia as follows (extract from Schedule B 5):

"As a married man and householder and head of a family, undersigned claims benefit of the homestead exemption of $2,000 under the Virginia statute, chapter 178 of Code, as to the articles in house occupied by him, not exempt under poor debtor law, viz.: 1 bureau, 1 table, 1 washstand, 7 chairs, 1 sofa, 1 desk, 1 lounge, 2 clocks, pictures in house, and bric-a-brac and ornaments; in all worth probably about $60.00.

"[Signed] W. G. Moran."

The first meeting of creditors was held on the 8th day of April, 1900, and on the 9th day of April, 1900, bankrupt filed with the referee the following notice:

"The undersigned, W. G. Moran, hereby gives notice of his intention to claim his homestead exemption to the extent of $2,000 out of the property which this proceeding involves, such exemption to be paid in money from the proceeds of such portion of said property as said Moran is entitled to have exempt under the laws, whether such portion be from sales or collections; and the undersigned reserves the right to indicate said property later. Moreover, the referee in bankruptcy will take notice that no assignment is to be made by him to such trustee as may be selected until the claim of homestead is formally made out and filed. And the undersigned will amend his schedule claiming said exemption.

"[Signed] W. G. Moran."

Upon this notice the bankrupt made application to amend his schedule so as to increase his claim for exemption. The hearing of the application to amend the schedule was continued to May 8, 1900, at which time creditors filed exceptions to the amendment, and the referee refused to allow the same; and thereupon the bankrupt filed his petition for a review of the referee's decision to the judge of the district court of the United States for the

Western district of Virginia. On the 28th of December, 1900, the judge of the Western district of Virginia, sitting as a court of bankruptcy, rendered a decision sustaining the referee, and the bankrupt now files a petition to this court asking that the decision of the district court be reversed.

Anterior to the bankruptcy proceedings the bankrupt had given notes to certain of his creditors, aggregating an amount in excess of the full exemption under the law, in which he had waived, in accordance with the Virginia statute, his right to claim homestead exemption, which said notes are still outstanding and unpaid; and in the petition filed by the bankrupt in this court is the following statement: "Petitioner did not make his claim to homestead when he first filed his schedules. He had not then realized the necessity for doing so. But when he considered that certain creditors held notes waiving homestead (which waivers were made according to the state law, and treated as perfectly valid by all courts everywhere) he saw clearly that he was obliged to claim his full homestead in order that his agreement with those creditors (that is to say, the agreement evidenced by the waivers) might be faithfully carried out." And further, in his petition, the bankrupt, after stating that the waivers in the notes gave no specific liens, but created a superiority of right which should be protected in the bankruptcy court, says that "he was obliged to do it [that is, amend his claim to the full amount of $2,000] to maintain good faith with the creditors holding the waiver notes; and he made the claim, not with the least intention of committing a wrong, but solely for the purpose of asserting and securing a right." In pursuance of the constitutional provision, the legislature of Virginia has enacted certain laws relative to the manner in which the claim for homestead and exemptions may be asserted and set apart, and also providing that a person entitled to exemptions may waive the same as to any particular debt by setting forth the waiver in the face of the obligation.

George Perkins, for petitioner.

D. Harman (Wilson & Manson, on the brief), for respondents.

Before SIMONTON, Circuit Judge, and MORRIS and BOYD, District Judges.

BOYD, District Judge (after stating the facts as above). Under the head of "Homestead and Other Exemptions" the constitution of Virginia (article 11, § 1) provides that:

"Every householder, or head of a family, shall be entitled, in addition to the articles now exempt from levy or distress for rent, to hold exempt from levy, seizure, garnisheeing or sale, under any execution, order or other process issued on any demand for any debt heretofore or hereafter contracted, his real and personal property, or either, including money and debts due him, whether heretofore or hereafter acquired or contracted, to the value of not exceeding two thousand dollars, to be selected by him."

There is a further provision (article 11, § 5) that:

"The general assembly shall at the first session under this constitution prescribe in what manner and on what condition the said householder or head of a family shall thereafter set apart and hold for himself and family, a homestead out of any property hereby exempted, and may in its discretion determine in what manner and on what conditions he may thereafter hold, for the benefit of himself and family, such personal property as he may have, and coming within the exemption hereby made."

The Virginia court of appeals, in construing the homestead and exemption provisions of the Virginia constitution, referring to the debtor, in Reed v. Bank, 29 Grat. 719, holds that:

"The privilege given by the constitution is a personal privilege, to be exercised by him or not, as he may choose. The constitution does not de-

clare, as does the poor debtor law, that certain property shall be exempt from levy, etc., but that the householder or head of a family shall be entitled to hold property to be selected by him to the value of $2,000. In the former case the law executes itself. It is a part of the public policy of the government to exempt that particular property absolutely from forced sale, and its provisions cannot be waived. But there is no such constitutional declaration that property to the amount of $2,000 shall be exempt. On the contrary, the very language used plainly shows that it may be exempt only when the privilege given the householder or head of a family has been exercised, and the property selected and set apart by him."

This doctrine was reaffirmed in Linkenhoker's Heirs v. Deitrick, 81 Va. 44, 59 Am. Rep. 648, and was also declared by Chief Justice Waite in Re Soloman, 2 Hughes, 164, Fed. Cas. No. 13,166. The bankrupt in this case, when opportunity was afforded, exercised the privilege which the exemption laws of the state of Virginia conferred upon him. He filed his schedule before the meeting of creditors had taken place, and before the title to the property had passed, by the operation of the bankrupt law, to the trustees, and he made claim to certain specific articles of property as exempt under the provisions of the Virginia law above quoted. The property specified was that selected by him and claimed as exempt, and was all that he did claim at that time. Subsequently he filed his petition to be allowed to amend his claim for exemption, in which he asks to enlarge said claim, and have other property set apart, on the ground that it is his duty "to claim his full homestead, in order that his agreement with those creditors (that is to say, the agreement evidenced by the waivers) might be faithfully carried out." It is thus seen that the purpose of the bankrupt, in his effort to enlarge his exemption, is not that property may be set apart for the benefit of himself and his family, in pursuance of the humane objects of the exemption law, but that whatever additional property he may withdraw from his estate in bankruptcy may go to the payment of debts due to persons to whom he has executed notes in which he has waived his right to claim exemption. We think the supreme court of Ohio, passing upon the exemption laws of that state, in Sears v. Hanks, 14 Ohio St. 300, 84 Am. Dec. 381, has well defined the purpose of the homestead exemptions generally when it says:

"The humane policy of the homestead act seeks not the protection of the debtor, but its object is to protect his family from the inhumanity which would deprive its dependent members of a home."

And among many other decisions to the same effect we find the following:

"A statute of exemption is properly a remedial statute, evidently intended to prevent families from being stripped of their last means of support, and left to suffer, or cast as a burden upon the public, and to rescue them from the hands of unfeeling creditors." Leavitt v. Metcalf, 2 Vt. 342, 19 Am. Dec. 718.

"The exemption was made for the benefit of the family, rather than its head, the debtor. Its object concerns the question of public policy. It is to keep together the wife and children, that the latter may be trained and educated to become useful members of society, to protect them against dangers to which they would be exposed by being scattered at a tender age, and to secure them the means of instruction and improvement." Griffin v. Sutherland, 14 Barb. (N. Y.) 456.

The bankrupt in this case, upon the facts set forth in his petition, seeks exemption for no such purpose, but avows the object of his petition to be to remove so much of his property as he can from the hands of the trustee in bankruptcy, in order that it may go to the benefit of certain creditors holding what are called "waiver notes." "While the exemption laws are to be construed liberally, so as to carry with them the benevolent policy of the legislature, debtors claiming their benefit must bring themselves at least within the spirit of their provisions." 12 Am. & Eng. Enc. Law (2d Ed.) p. 77. It is evident that the bankrupt, when he filed his schedules and made claim to exemption, had it in mind to set apart only such of his property as would inure to the benefit of himself and family; but later on he conceived the idea of favoring certain of his creditors to the exclusion of others, and it then occurred to him to enlarge his claim for exemption, for the purpose, as stated in his petition, of carrying out his agreement with these creditors. To grant his petition, therefore, would not, in our opinion, be consistent with the objects of the homestead exemption, or in furtherance of the due administration of his estate under the bankrupt laws of the United States. The bankrupt having exercised his privilege and made his selection of exempted property, the title to his entire estate, except the property selected as exempt, passed to the trustee, to be administered for the benefit of creditors under the provisions of the bankruptcy act, and the title thus vested in the trustee cannot now be disturbed by setting apart further exemptions. "As a general rule, if a person who holds a homestead, and is under no disability to assert it, fails to do so at the time and in the manner provided by law in any action or proceeding involving the right, he will be deemed to have waived his exemption." 15 Am. & Eng. Enc. Law, p. 638, cases cited in note 7. We think this doctrine is in entire harmony with the exemption laws of Virginia as construed by the highest court of the state. The claim to exemptions under the constitution and statute law of the state is a privilege which the debtor may exercise or not, as he chooses; and, it being left to his option, he may claim as exempt property to the full amount of $2,000, or for a less amount, if he may see proper. In this case the bankrupt has exercised his privilege, has selected the property which he claimed as exempt, and, with the exception of the property so claimed, the title to the estate has vested in the trustee. We think the bankrupt is concluded, and should not be allowed to amend his schedules as prayed for.

The petition is denied, and the judgment of the district court affirmed.