## In re DUFFY.

(District Court, M. D. Pennsylvania. December 6, 1902.)

No. 200.

1. BANKRUPTCY—EXEMPTION—FORM OF CLAIM—AMENDMENT.

Under the laws of Pennsylvania and the form of schedule prescribed by the supreme court, the exact property which a bankrupt desires to retain under his state exemption must be set out in his schedule; but, where this is not sufficiently done, the defect may be cured by amendment.

2. SAME—FRAUDULENT DISPOSITION OF PROPERTY—FORFEITURE OF EXEMPTION.

In Pennsylvania one who is guilty of a fraudulent disposition of his property forfeits his right to his state exemption. But this cannot be charged where he has sold it for a fair consideration and with an honest motive, even though it have the effect of leaving nothing for creditors to get hold of. Neither will this view be taken because the debtor uses the proceeds to pay some creditors rather than others, or even devotes a portion to his own needs.

3. SAME—ON THE FACTS.

Where, therefore, a bankrupt continues in business, buying and selling right up to the time he filed his petition, he is not convicted of the fraudulent disposition of his property, so as to forfeit his exemption, although he sold goods in considerable quantities to his immediate relatives, it not being shown that it was not for a fair price; nor because he delivered the goods at night, this being a matter of necessity, and not of concealment; nor yet because he waited to file his petition until after a railroad pay-day, so as to collect in as much as possible of his accounts, paying over the proceeds on a debt due by note to his wife.

4. SAME—FRAUD—PURCHASES IN CONTEMPLATION OF BANKRUPTCY—EXAMINATION OF BANKRUPT.

Semble, that a debtor is not deprived of his exemption in Pennsylvania because he has debts which were fraudulently contracted; but, even were that the law, the mere purchase of goods while insolvent is not a fraud in that state, although if in immediate contemplation of bankruptcy it might be. But, even where purchases have been made right up to the time of filing the petition, a fraudulent intent will not be inferred where the bankrupt, on whose cross-examination the case is disposed of, has been prevented by the referee from explaining the transaction.

In Bankruptcy. Exceptions to report of referee.

John W. Miller, for bankrupt.
Ralph B. Little, opposed.

ARCHBALD, District Judge. The referee was clearly right in holding that the particular property which the bankrupt desired to retain under his state exemption must be set out in his schedules. It was not sufficient to simply claim that property to that extent be set off to him. The exact property which he elected to take should have been specified. This is what is required by the state law (Hammer v. Freese, 19 Pa. 255), and the bankrupt law is governed by it. Besides that, the schedules prescribed by the supreme court call for a particular description of the property claimed, which of itself is controlling. Bankruptcy Forms, schedule B (5) 18 Sup. Ct. xvi. But this is a curable defect, and the petitioner asks leave to amend his schedules accordingly. To this he is clearly entitled (General Orders

¶ 2. See Exemptions, vol. 23, Cent. Dig. § 128.

11 [18 Sup. Ct. v] ), and having presented his application in due form, an amendment will be allowed as prayed for.

With regard to the merits, it is no doubt true, as decided in Appeal of Imhoff, 119 Pa. 353, 13 Atl. 279, and as recently enforced in this court in Re Yost (D. C.) 117 Fed. 792, that one who is guilty of the fraudulent disposition of his property forfeits his right to the exemption to which he would be otherwise entitled; but I cannot see that the bankrupt is convicted of this in the present instance. It is said he made large purchases of goods just preceding his bankruptcy, and when he knew he was in failing circumstances; that he held off with his petition until after the railroad company's pay day, so as to collect in as large an amount as possible on his outstanding accounts; that he appropriated the money received from this and other sources to pay off an alleged debt to his wife; and that he made unusual sales of groceries to certain of his relatives, delivering the same covertly by night. The evidence on which the referee is led to sustain these charges is that of the bankrupt, taken at the time he was examined at the instance of creditors with reference to the conduct of his business and the extent of his property. The right to make use of this evidence is challenged, because the referee refused to allow the bankrupt to be examined by his counsel with respect to the matters on which he had been cross-examined, the reason assigned for the refusal being that the interests of the bankrupt were not affected by the proceedings. It is difficult to reconcile that ruling with the use now made of the bankrupt's testimony, but, without disposing of that question, I am satisfied that, taking it as it stands, it does not justify the construction put upon it, or sustain the charges of fraudulent conduct which are made. Aside from the provisions of the bankrupt law, while a person remains in the undisputed possession of his property, he is entitled to complete dominion over it, whether solvent or insolvent, and cannot be said to have made a fraudulent disposition of it where he has sold it for a fair consideration, and with an honest motive, even though it may incidentally have the effect of leaving nothing for creditors to get hold of. It is no doubt true that, if the real purpose is to put the property out of their reach, it is a fraud, whether a full consideration is received or not (Ferris v. Irons, 83 Pa. 179); but there must be something more than the mere disposal of the property to give it any such character. Nor will this view be taken of it because the debtor uses the proceeds to pay some creditors rather than others, or even devotes a portion of it to his own needs. Githens v. Shiffler (D. C.) 112 Fed. 505. As pointed out in that case, an intent to prefer is not the same as an intent to defraud, nor is a preferential transfer to be confounded with a fraudulent one. In the present instance the bankrupt had a perfect right to sell his goods where and as he could up to the time he filed his petition, and, while it may excite a suspicion to have him do so to his immediate relatives, it can do no more. It is not shown that he did not get a fair price for them; and the delivery by night is explained as a matter of necessity, and not of concealment, this being the only time when he could be away from his store. A considerable part also, which was hauled to his father-in-law's house,

was destined, as he says, to other parties. Nor can it be charged as a fraud that the bankrupt saw fit to defer filing his petition until after the railroad pay day. He had a right to collect his accounts, if he could, in this way, and to dispose of the proceeds as his judgment dictated; and if, as appears, he was indebted to his wife, he could pay her, instead of others, without being charged with fraud. She held his note, and, outside of the provisions of the bankrupt law, it was his privilege to pay her, if he saw fit, in preference to other creditors. As to the alleged purchase of goods by the bankrupt while in failing circumstances, it has never been decided in Pennsylvania, so far as I am aware, that a debtor is deprived of his exemption because he has debts which were fraudulently contracted. But assuming the law to be that way, the mere purchase of goods while insolvent is not a fraud in this state, however it may be elsewhere. Smelting Co. v. Temple, 12 Pa. Super. Ct. 99. A purchase in immediate contemplation of bankruptcy, or with no expectation of paying, may be; but it can hardly be said that we have that here. It is true that some purchases were made close up to the time when the petition was filed, but how this chanced to come about we do not know. The determination to take the benefit of the bankrupt act may have been hurriedly made, or forced upon the bankrupt suddenly; and, as he was deprived of the opportunity of making an explanation by the ruling of the referee, it is no more than fair to conclude that he could have made one if it were necessary.

Not being able, therefore, to coincide with the views of the learned referee, the report is set aside, and the case sent back, with directions to allow the bankrupt his exemption.