In re GERBER. †

FREEDMAN BROS. CO. et al. v. PARKER.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1911.)

No. 1,871.

1. BANKRUPTCY (§ 400*)—EXEMPTIONS—NATURE OF PROCEEDINGS—EQUITY.
   Courts of bankruptcy proceed on equitable principles and will not sustain a positive fraud committed by the bankrupt in an endeavor to extend his exemptions any more than it would be sustained by a court of equity.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 400.*]

2. BANKRUPTCY (§ 396*)—EXEMPTIONS—HOMESTEAD—FRAUD.
   On April 15, 1909, the bankrupt, with knowledge of his insolvent condition and approaching bankruptcy, paid $200 on the purchase price of property thereafter claimed as a homestead. Later in that month an involuntary bankruptcy petition was filed against him which he strongly contested and during the pendency thereof converted $1,100 then in his possession into a certificate of deposit payable to his attorneys and delivered the same to them to prevent creditors from garnisheeing it. On May 18th following, such attorneys stipulated with the attorney for the petitioning creditors that the pending proceeding be dismissed and that the costs be paid out of the proceeds of the certificate and the balance returned to the bankrupt and that he should then consent to be immediately adjudged a bankrupt on a new petition filed by other attorneys for other creditors. A futile effort to persuade the bankrupt to consent to an adjudication on the first petition having been made, it was dismissed, and on the next day a new petition was filed against him on which an adjudication followed, but during the interim he paid from the certificate of deposit and other moneys held by him the balance of $1,300 on the price of the property, receiving a deed, and immediately filed a declaration of homestead. *Held*, that such transaction was fraudulent, and that the bankrupt was not entitled to hold the property exempt as his homestead.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 396.*]

3. BANKRUPTCY (§ 400*)—EXEMPTIONS—ALLOWANCE—PROCEDURE.
   While exemptions allowable to a bankrupt depend on the statutes of the state, the manner of claiming them and the proceedings to set apart and award them to the bankrupt are regulated by Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418).
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 400.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied May 22, 1911.

4. BANKRUPTCY (§ 22*)—EXEMPTIONS—RULES—FORMS—EFFECT.

The rules and forms prescribed by the Supreme Court under and by virtue of the bankruptcy act for its administration have the force and effect of law.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 22.*]

5. BANKRUPTCY (§ 399*)—EXEMPTIONS—AWARD—TIME—FORM—WAIVER.

Where a bankrupt failed to make claim for his exemptions in the manner and within the time prescribed by Bankruptcy Act July 1, c. 541, § 47, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), General Orders 17 and 38, and Form 47 (32 C. C. A. xix. xxxvii, lxxvi; 89 Fed. viii, xvi, lii), the right to exemptions was waived.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 399.*]

Petition for Revision of Certain Orders in Bankruptcy of the United States District Court for the Northern Division of the Western District of Washington.

In the matter of bankruptcy proceedings of Benjamin Gerber. On petition of Freedman Bros. Company and others to revise certain orders granting exemptions to the bankrupt. Reversed with directions.

The bankrupt was a retail dealer in women's wearing apparel in the city of Seattle, and was adjudged bankrupt May 19, 1909, by the court below. His schedules of assets and liabilities were filed May 27, 1909.

The bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), provides that it shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months, or the greater portion thereof, immediately preceding the filing of the petition.

The state statute applicable to the case is found in subdivision 4 of section 563 of Remington and Ballinger's Annotated Codes and Statutes of Washington, which reads as follows: "To each householder, two cows, with their calves, five swine, two stands of bees, thirty-six domestic fowls, and provisions and fuel for the comfortable maintenance of such householder and family for six months; also feed for such animals for six months: Provided, that in case such householder shall not possess or does not desire to retain the animals above named, he may select from his property and retain other property, not to exceed two hundred and fifty dollars coin in value. The selection in the proviso mentioned shall be made in the manner and by the person, and at the time mentioned in subdivision three, and said selection shall have the same effect as selections made under subdivision three of this section."

The preceding subdivision of the same section, to wit, subdivision 3, is as follows: "To each householder, one bed and bedding, and one additional bed and bedding for each additional member of the family, and other household goods, utensils, and furniture, not exceeding five hundred dollars coin in value. The other household goods and utensils, and furniture specified above shall, on the demand of the officer having the execution or attachment in hand, be selected by the husband if present, if not present they shall be selected by his wife, and in case neither husband or wife, nor other person entitled to the exemption by having the description of a householder shall be present to make the selection, then the sheriff shall make a selection of the household goods, utensils and furniture, equal in value to said five hundred dollars, and shall return the same as exempt by inventory, and such selection by the sheriff or other person described above shall be prima facie evidence—(1) That such household goods, utensils and furniture are exempt from execution and attachment; (2) That the value of the property so selected is not over five hundred dollars."

In compliance with the bankruptcy act, which requires the bankrupt to include in his schedules "a particular statement of the property claimed as

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

exempt," etc., Gerber, in Schedule B (5), listed wearing apparel of himself and family, and also certain specified household goods and effects, concerning which there is no controversy. He also claimed in the schedule mentioned $250 in cash by virtue of the above provision of the statute of the state of Washington concerning animals, and also, by virtue of the same statute, "a sufficient sum out of the assets of his estate for provisions for himself and his family for a period of six months," and also claimed certain real estate acquired by him, as hereinafter stated, as a homestead. A trustee of the estate was selected. On the 8th of July, 1909, the bankrupt filed with the referee in bankruptcy a petition asking an order directing the trustee to set aside to him the property so claimed by him as exempt, in response to which petition the trustee, on the 12th of October, 1909, filed with the referee a report, designating and setting aside to the bankrupt all of the property so claimed as exempt, to wit, the wearing apparel and household furniture, $250 in money by virtue of the above section of the statute of Washington in lieu of cows, swine, bees, and fowls, $25 a month, aggregating $150, for the maintenance of the bankrupt and his family for six months, and also the real property claimed as a homestead.

Within 20 days after the filing of the trustee's report of such exemptions, a number of the creditors of the bankrupt joined in filing exceptions thereto, directed only to the allowance of the cash exemptions and the homestead. With respect to the cash exemptions the exceptions were based upon the contention that at the time the bankrupt filed his schedules the property of his estate was still in specie, and the bankrupt had ample opportunity to make his selections from such existing property; that he had no right to claim money in lieu of goods; and that by failing to make his selection at the time and in the manner provided by law he had waived such exemption. In respect to the cash allowance for the maintenance of the bankrupt and his family for six months, the contention of the creditors was that the statute of Washington does not authorize exemptions in lieu of provisions and fuel, either in money or property. The homestead allowance was excepted to on the ground that the bankrupt had acquired the homestead in contemplation of his immediate adjudication as a bankrupt and in pursuance of a scheme to defraud his creditors.

The issues thus formed were heard by the referee, who found and decided as follows: That, as to the lieu exemptions allowed by the trustee, the facts were that no claim for specific property in lieu of the animals and supplies was made by or on behalf of the bankrupt; his only claim being for a cash allowance. That the specific property which he might have claimed on account of such lieu exemptions was sold by the trustee, and not more than 60 per cent. of its value obtained therefor upon such sale. That in view of those facts the referee was of opinion, and so held, that the bankrupt should only receive in cash 60 per cent. of the amount to which he would have been entitled in specific property had he made claim therefor, and was therefore entitled to $150 in cash out of the proceeds of the property sold by the trustee. "That as to the exemptions of property necessary for his maintenance, the statute not having provided any amount in lieu thereof, there seemed to be no guide to aid in determining how much cash he would be entitled to instead of specific property if he had made claim therefor: but the same reasons would obtain for reducing the cash allowance on this account as for that claimed in lieu of certain animals, and the referee agreeing with the trustee that $25 per month would have been a fair allowance if taken in property, 60 per cent. thereof, or $15 per month, would be a fair allowance in cash." For the reasons stated, the referee reduced the aforesaid allowances made by the trustee to $150 and $90, respectively.

With regard to the homestead claim, the findings of fact and conclusions of the referee were as follows: "That on the 15th day of April, 1909, the bankrupt paid a deposit of $200 on the purchase price of the property now claimed as homestead. That at that time he was wholly insolvent, and knew himself to be insolvent. That many suits were pending, and were threatened by creditors for accounts against the bankrupt long past due. That during the latter part of April, 1909, a petition in involuntary bankruptcy was filed against the bankrupt by creditors, which petition was strong-

ly contested by the bankrupt. 'That during the pendency of such proceeding the bankrupt converted $1,100, which he had in his possession, into a bank certificate of deposit payable to the order of Blaine, Tucker & Hyland, his attorneys, and delivered said certificate to said attorneys. That his purpose in placing said money in that shape was to prevent creditors from garnisheeing it. That on May 18, 1909, the bankrupt's attorneys stipulated with the attorney for the petitioning creditors that the pending bankruptcy proceeding be dismissed; that costs aggregating $237 incurred in said proceeding be paid out of the $1,100 held by Blaine, Tucker & Hyland; that the balance be paid back to Gerber; and that Gerber should consent to be immediately adjudged bankrupt upon a new petition to be filed against him by other attorneys representing other creditors. That an effort was made by the attorney who had filed the first petition to persuade Gerber to be adjudged bankrupt upon the first petition, but the bankrupt insisted upon a dismissal of said first petition and the filing of a new one. That in pursuance of said stipulation the said first proceeding in bankruptcy was dismissed on the 18th day of May, 1909, and on the 19th day of May, 1909, said Gerber was adjudged bankrupt upon a second petition filed that day. That during the interim between the dismissal of the first petition and the filing of the second petition said Gerber paid a balance of $1,300 cash on the purchase price of the property, receiving a deed therefor. That immediately after receiving said deed he filed a declaration of homestead on said property. That the $1,300 cash so paid was made up of the balance received from Blaine, Tucker & Hyland upon the dismissal of the first petition and other moneys held by the bankrupt. From the foregoing facts the court concludes that the bankrupt invested said funds while insolvent and knowing himself to be insolvent, for the purpose of withholding same from his creditors; that the bankrupt insisted upon a dismissal of the first petition in bankruptcy in order that he might conclude the transaction with respect to the purchase of said property before the filing of the second petition upon which he was adjudged bankrupt; that in equity and good conscience it would seem that in view of these facts said homestead should not be set aside to the bankrupt as exempt, but under the liberal rule laid down by the Supreme Court of this state said undersigned (referee) was constrained to hold that it was, notwithstanding his opinion as to the equities involved in the proposition."

Upon petition to the court below for a revision of the foregoing decision of the referee, the court confirmed that decision, and hence the proceedings here.

Leopold M. Stern, for petitioner.

James B. Kinne, for bankrupt.

Henry F. McClure, Walter A. McClure, and Wm. E. McClure, for respondents.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). The motion to dismiss the petition for review is without merit and is denied.

While it is well-established law that exemptions in behalf of unfortunate debtors are to be liberally construed in furtherance of the object of such statutes, it should never be forgotten that courts have not the power to legislate, and can no more add an exemption not fairly within the statute than they can take from the statute. So also must it be remembered that courts of bankruptcy proceed upon equitable principles, and should no more sustain a positive fraud than would a court of equity. In respect to this homestead claim, both the referee and the District Court expressly recognized its fraudulent character. In view of the facts found, it is impossible to see how it could have been otherwise. Here was a debtor fully conscious of his

bankruptcy, strenuously opposing those of his creditors who were seeking his adjudication as a bankrupt, the while disposing of and secreting his cash, and finally consenting to such an adjudication provided the creditors would dismiss their then pending petition for his adjudication as a bankrupt and procure other creditors to file a new one: his obvious purpose, made manifest by his action, being to put, in the interim, the money to which his creditors were justly entitled into property upon which he could and did forthwith declare a homestead. Surely no court acting upon equitable principles should sustain such a transaction.

In denying the validity of a similar claimed exemption, the Circuit Court of Appeals for the Fourth Circuit said, in the case of McGahan v. Anderson, 113 Fed. 115, 119, 51 C. C. A. 92, 95:

"As to the homestead exemption, the evidence of the bankrupt is by no means satisfactory. He admits that he began the erection of the 'house in July or August, 1880—after July 1st.' He does not make a candid disclosure as to where the money came from to build this house, but, when pressed, admitted that a part of it 'came from the sale of goods which he had not paid for.' He fails to disclose how much money came from the goods which he had purchased and never paid for. He alone was possessed of the information upon the subject. It was his duty, in setting up a claim to a homestead, to show by clear and conclusive proof that at the time he built the house upon the property he was in a solvent condition, and able to satisfy all the claims against him, before he could take money from his business for the purpose of securing a homestead. The fair deduction from all the evidence in this case tends clearly to prove that at the time he commenced the erection of this house he was in a failing condition, if not insolvent. He built this house upon a lot owned by his wife, and afterwards had it conveyed to himself in order that he might have it set apart as a homestead. This is a most potential fact to show that he was shaping his course to protect himself as far as possible from the consequence of bankruptcy, which the evidence tends to show was imminent at that time, for on the 25th day of October following a petition of involuntary bankruptcy was filed against him, and in less than a month he was adjudicated a bankrupt. We deem it unnecessary to discuss the evidence in detail filed in this case, but content ourselves with the conclusions that we have reached based upon all the evidence, more particularly on the evidence of the bankrupt himself."

See, also, In re Mayer, 108 Fed. 599, 47 C. C. A. 512; In re H. L. Evans & Company (D. C.) 158 Fed. 153; In re Boothroyd & Gibbs, Fed. Cas. No. 1,652.

Respecting the money allowance to the bankrupt in lieu of the cows, calves, swine, bees, and domestic fowls exempted by the Washington statute, it is not claimed that the exact provisions of the statute of that state here in question have been expressly construed by the Supreme Court of Washington; but its rulings in the cases of Carter v. Davis, Sheriff, 6 Wash. 327, 33 Pac. 833, and United States Fidelity, etc., Co. v. Hollenshead, 51 Wash. 326, 98 Pac. 749, are quite suggestive of the true construction of the provisions of that statute. The first of the cases mentioned was brought by the wife of one R. P. Carter against the sheriff of one of the counties of the state of Washington to recover certain property levied by the sheriff under certain writs of attachment issued against R. P. Carter, and also to recover certain moneys, being the proceeds of attached property sold by the sheriff by order of court. The property levied upon and sold consisted of

two horses named Big Nellie and Fannie, for which the sheriff re-- ceived $165, and also certain other live stock, consisting of mules, horses, and cattle, for which he received $250. R. P. Carter having left the state, his wife, " 'acting for the said R. P. Carter, and in his absence,' duly and legally claimed of the appellant (sheriff) as exempt from attachment and sale, and as being community property of the respondent (plaintiff) and the said R. P. Carter, certain household goods and furniture," not exceeding $150 in value, and not in-- volved in the litigation; and "also $250 in coin, the proceeds of the sale of live stock, selected in lieu of the exemptions provided for in, subdivision 4 of section 486 of the Code of Civil Procedure; and also the sum of $165, the proceeds derived from the sale of the horses Big Nellie and Fannie." The court said:

"Now, conceding that R. P. Carter was a householder at the time of the levy, and it appearing that his family consisted of his wife, the respondent, only, he had a right as such householder, if entitled to any exemption whatever, to retain one bed and bedding and other household goods and utensils and furniture, such as he might select, but not exceeding $500 coin in value. Code Civ. Proc. § 486, subd. 3. The respondent, as his representative, selected the 'bed and bedding' and certain other household goods, utensils, and furniture, not exceeding $150 in value, none of which were levied upon by the appellant, and then demanded of appellant, in lieu of other property of like character which was not selected, and perhaps not even possessed by her husband, $250, the proceeds of the sale of the live stock above mentioned, none of which was claimed to be exempt at all, and also the sum of $165, the proceeds derived from the sale of the two horses Big Nellie and Fannie. The claim to this $250, in the hands of the sheriff, is manifestly unfounded in law. The section of the statute referred to authorizes the selection of 'other household goods, utensils and furniture,' and prescribes the method and by whom such property may be selected, but confers no right to retain or select other property of a different character in lieu of that authorized to be selected and retained."

If, as the court there held, the right given by the Washington statute to select "other household goods, utensils and furniture," in cases provided for, was confined to other property of the same kind, and conferred no right to retain or select other property of a different character in lieu of that authorized to be selected and retained, it would seem to follow necessarily that the same construction must be given to like provisions contained in subdivision 4, § 563, Rem. & Bal. Code, Wash.

The case of United States Fidelity, etc., Co. v. Hollenshead presented an appeal from a judgment directing the payment of money in the registry of the court to a judgment creditor, upon disallowing a claim for exemptions. We extract from the opinion of the court:

"After trial on the merits, judgment was entered for plaintiff and against defendant, in a suit to recover money upon contract. On the same day, and after the trial on the merits, judgment for the sum of $589.41 was entered against the First National Bank of Ritzville, Wash., in a garnishment proceeding ancillary to the main action. Defendants and the garnishee defendant were represented by the same attorney in all proceedings prior to the rendition of the judgment. The trials being concluded on the 7th day of June, the court announced its judgment in each case, but they were not formally entered until the 10th day of June, 1907. On the day prior to the formal entry of the judgments, defendant Hollenshead made and filed a claim for exemptions, in the following form:

" 'State of Washington, County of Adams—ss.: I, Aaron Hollenshead, one of the above-named defendants, being first duly sworn, on oath do depose and say that the judgment in the above-entitled action was obtained against myself, as one of the defendants, in the sum of $————, on this 7th day of June, 1907; that I am a householder, residing in the town of Ritzville, Adams county, Wash.; that the family consists of myself and wife; that I am possessed of household goods, utensils, and furniture, not equal in value to the sum of $500; that the same are exempt from attachment and execution; that I am entitled to an exemption, under the statute, to a further exemption in the sum of $250 coin, in value; that the above-named plaintiffs have recovered judgment against the First National Bank of Ritzville, Wash., garnishee defendant, in the sum of $589.41, in the above-entitled action; that I am entitled to the sum of $250 in lieu of cows, calves, swine, bees, fowls, and feed therefor, which I do not own or possess, out of the moneys which the said First National Bank of Ritzville now have in their possession and from which the said judgment stands against.'

"Execution having issued, the garnishee defendant paid the amount found to be due from it to appellant into the registry of the court, and thereafter upon motion the court ordered the money paid over to plaintiff in satisfaction of its judgment. Upon these proceedings defendant predicates error, and insists that, under the liberal rules applied by this court in construing exemption statutes, the money should have been paid over to him as exempt. However, we believe that the rule relied upon by appellant cannot be invoked until a claim has been made at the proper time and in a proper manner.

"The law is solicitous for the welfare of the debtor, but it also recognizes the rights of the creditor to fully satisfy his judgment out of the property of the debtor that is not exempt from execution. The right to claim property in lieu of other property specifically exempted by statute is a privilege, and will be waived unless asserted at the time and in the manner expressly or impliedly required by the law. 12 Am. & Eng. Encyc. Law (2d Ed.) 198," where the law is stated to be as follows:

"If a statute exempts a particular kind of property or specific articles only, the right of exemption does not extend to any other kind of property or to any other articles."

See, also, Cyc. vol. 18, p. 1381.

The ruling therefore of the Supreme Court of Washington is that claims to such exemptions as those in question conferred by the Washington statutes must be seasonably made.

While the exemption right in the case in hand depends upon the statutes of Washington, as has already been said, the manner of claiming such exemptions and of setting apart and awarding them is regulated by the bankruptcy act. In re Friedrich, 100 Fed. 284, 40 C. C. A. 378; In re Mayer, supra. And the Supreme Court, by virtue of the bankruptcy act, has prescribed the time and manner of preferring such claims. No. 38 of the General Orders in Bankruptcy, so prescribed, provides:

"That the several forms annexed to these general orders shall be observed and used." 32 C. C. A. xxxvii, 89 Fed. xvi.

And the official form so annexed requires, among other things:

"A particular statement of the property claimed as exempted from the operation of the acts of Congress relating to bankruptcy, giving each item of property and its valuation; and, if any portion of it is real estate, its location, description, and present use."

General Order 17 (32 C. C. A. xix, 89 Fed. viii), which defines the duties of the trustee, requires him to "make report to the court within twenty days after receiving the notice of his appointment, of the ar-

ticles set off to the bankrupt by him, according to the provisions of the forty-seventh section of the act, with the estimated value of each article, and any creditor may take exceptions to the determination of the trustee within twenty days after the filing of the report."

Section 47 of the act, referred to in the order last quoted, also defines the duties of the trustees, which duties include the direction to (11) "set apart the bankrupt's exemptions, and report the items and estimated value thereof to the court as soon as practicable after their appointment."

And Form 47 (32 C. C. A. lxxvi, 89 Fed. lii) prescribed by the Supreme Court requires the trustee to set forth in the report' which is thereby required of him a schedule of the "property designated and set apart to be retained by the bankrupt aforesaid, as his own property, under the provisions of the acts of Congress relating to bankruptcy."

The rules and forms so prescribed by the Supreme Court under and by virtue of the bankruptcy act have the force and effect of law, and it therefore seems to us to result necessarily that the bankrupt here, even though it should be conceded that he was not limited to the species of property specified in the statute of Washington as hereinbefore indicated, lost any right he may have had to the exemptions claimed, by his failure to make the claim in the manner and within the time legally prescribed therefor. And it has been so decided. In re Von Kern (D. C.) 135 Fed. 447; In re Blanchard (D. C.) 161 Fed. 793; In re Prince & Walter (D. C.) 131 Fed. 546; In re Duffy (D. C.) 118 Fed. 926; In re Staunton (D. C.) 117 Fed. 507; In re Haskin (D. C.) 109 Fed. 789; In re Wunder (D. C.) 133 Fed. 821; In re Pfeiffer (D. C.) 155 Fed. 892. See, also, Moran v. King, 111 Fed. 730, 49 C. C. A. 578.

It also results from what has been said that the bankrupt was not entitled to the cash allowance in lieu of provisions and fuel.

The judgment is reversed, with directions for further proceedings in accordance with the views above expressed, and with costs in favor of the petitioners and against the respondent.