### In re ANDERSON.

(District Court, N. D. Georgia, N. W. D. May 29, 1915. On Rehearing on Objections to Homestead Exemption, July 10, 1915.)

No. 576.

1. BANKRUPTCY ☞399—HOMESTEAD EXEMPTIONS—RIGHT TO.
     Under Code Ga. 1910, § 3380, declaring that it shall be the duty of every person claiming the benefit of the exemption allowed in the article to act in perfect good faith and to make a full and fair disclosure of all personal property which he may possess, a bankrupt who conceals personal property, omitting it from the schedule is not entitled to claim the exemption.

     [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 657, 669; Dec. Dig. ☞399.]

---

2. **APPEAL AND ERROR** ⊜⇒1017—FINDINGS BY REFEREE—CONCLUSIVENESS.

Findings by a referee on questions of fact will not be lightly disturbed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3911, 3961, 3996–4005; Dec. Dig. ⊜⇒1017.]

3. **BANKRUPTCY** ⊜⇒398—EXEMPTIONS—HOMESTEAD EXEMPTIONS.

Where a bankrupt claimed a homestead exemption, there was not complete exemption which could be transferred until approval by the referee of the exemptions set apart by the trustee, or the lapse of 20 days without any objections of creditors being filed to the allowance.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 676, 677; Dec. Dig. ⊜⇒398.]

4. **BANKRUPTCY** ⊜⇒400—HOMESTEAD EXEMPTIONS—POWER OF COURTS.

The bankruptcy court has no control over the bankrupt's exemptions for the purpose of distributing them among creditors holding notes waiving the exemptions, and will pay over the fund claimed as exempt to the bankrupt or some one duly constituted and appointed to receive it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. ⊜⇒100.]

### On Rehearing on Objections to Homestead Exemption.

5. **BANKRUPTCY** ⊜⇒395—HOMESTEAD EXEMPTIONS—RIGHT TO.

A bankrupt, who had given several creditors notes waiving his statutory homestead exemptions, claimed the exemption for the avowed purpose of preferring one of such creditors. *Held*, that the court of bankruptcy would not, under the circumstances, sustain the claim of homestead exemption, for that would be subverting the statute which was for the benefit of the bankrupt's dependents to enable him to give a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 658; Dec. Dig. ⊜⇒395.]

In the matter of the bankruptcy of G. R. Anderson. Exceptions to homestead exemption. Sustained.

F. W. Copeland, of Rome, Ga., and Jas. P. Shattuck, of Lafayette, Ga., for bankrupt.

Lipscomb & Willingham and Nathan Harris, all of Rome, Ga., and J. M. Bellah, of Summerville, Ga., for objecting creditors.

NEWMAN, District Judge. The opinion of the referee in this case is as follows:

"A report was filed by the trustee, setting apart as a homestead to the bankrupt $1,575 in money, the proceeds of the sale of stock of goods at Lyerly, Ga., as asked for by the bankrupt. Objections to said report were filed by creditors, within 20 days from the filing of said report.

"The objections were based on three grounds: (1) That the bankrupt did not make a full and fair disclosure of his assets, because of not having incorporated in his schedule a piano and household furniture, alleged by objecting creditors to have been the property of the bankrupt. (2) That the bankrupt had failed to account for certain moneys collected by him during the months preceding the filing of bankruptcy proceedings, and was consequently guilty of unfair dealing. (3) That the bankrupt, immediately upon the setting aside of the homestead, transferred it to Davenport Bros., thereby preferring Davenport Bros. over other creditors. These are the grounds of objection alleged in the argument of objecting creditors, although not exactly as they are set out in the objections to the homestead.

"The evidence in regard to ownership of the furniture is conflicting. It seems that the bankrupt gave it in for taxes, in his own name, in 1914, but

claims that this was a mistake, that the property belonged to his wife. It is apparent, however, that the piano was paid for by the bankrupt, with funds taken out of his business. This is not disputed. It would also seem that the furniture was paid for by funds of the bankrupt, but this is not so clear. The bankrupt claims that he gave this property to his wife for services rendered him by her; but there is no express contract to this effect, as required by the laws of Georgia, to make such a contract valid.

"The affairs of the bankrupt, the management of his business for perhaps a year prior to the bankruptcy, seems to be involved in some obscurity. He does not make a very clear explanation of what he did with moneys collected, and what became of the funds arising from the business. His explanation is not sufficient, in the opinion of the referee, to acquit him of the charge of unfair dealing. For a number of months prior to the bankruptcy, he had bought large amounts of goods; and he does not clearly explain what became of the proceeds.

"Immediately upon the setting apart of exemption by the trustee, on the 1st day of December, 1914, the bankrupt transferred all of the property included in the exemption, to wit, $1,575 in money, to Davenport Bros., of Chattanooga, Tenn., with the express intention, in said transfer, of preferring said Davenport Bros. over his other creditors. This was done, although, under the rules of court, the creditors have 20 days within which to file objections to the homestead.

"I do not believe, under the ruling in Moran v. King, 7 Am. Bankr. Rep. 179, 111 Fed. 730, 49 C. C. A. 578, that the bankrupt could legally do this. This same point is also ruled in 12 American & English Encyclopedia of Law (2d Ed.) p. 77; also, in Re Garner (D. C.) 8 Am. Bankr. Rep. 263, 115 Fed. 200.

"It seems that the action of the bankrupt in this instance was for the benefit of a creditor instead of himself; that is, that the homestead which the law provides for the benefit of himself and family, would, in this instance, have been set apart for the benefit of Davenport Bros., one of the bankrupt's creditors. I am of distinct opinion that the piano, in this case, should have been included in the bankrupt's schedule, as a part of his assets, and that the failure to so include was a distinct violation of the intent of the Bankruptcy Act, and that said failure, in itself, is sufficient to defeat the bankrupt's homestead. I am of opinion that under all the circumstances in this case the homestead should be denied, and it is therefore ordered."

[1, 2] Taking the conclusions of the referee in inverse order, he finds that the piano should have been included in the bankrupt's schedule as a part of his assets, and the failure to so schedule it would defeat the exemption.

I have discussed this question in a number of cases, but I think the most of them are cited and referred to, and extracts from them given, in the case of In re Cochran (D. C.) 185 Fed. 913, and reference is also made to decisions of the Supreme Court of the state, and quotations from them given. All these decisions are based upon and refer to section 3380 of the Code of Georgia of 1910. That section provides that:

"It shall be the duty of each and every person who claims the benefit of the exemption allowed in this article, as the allowance is a liberal one, to act in perfect good faith; and as it is in the power of the debtor, claiming the exemption of personal property, to conceal part of his property or money, and to claim the balance as exempt, it shall be the duty of such debtor, when he takes steps in the court of ordinary to have said exemption of personal property set off to him, to make a full and fair disclosure of all the personal property, including money, stocks, and bonds, of which he may be possessed at the time, and all such money or property which he may hold in excess of the said exemption shall be subject to levy and sale for the payment of his just debts, and if the money or other personal property of which he is possess-

ed at the time of his said application, or at the time he obtains the order of court setting off the property exempt, is fraudulently concealed, or is not delivered up to the benefit of his creditors, no exemption shall be made in his favor till it is so delivered up. * * * The debtor guilty of willful fraud in the concealment of his property from his creditors, or which he is possessed when he seeks the benefit of the exemption, shall, on account of his fraud, lose the benefit of such exemption, and his property shall be subject to the payment of all just debts which he owed at the time such fraud was committed."

The second headnote in the Cochran Case, just cited, is as follows:

"Under Civil Code of Georgia 1895, § 2830 (section 3380, Code of 1910), declaring that a debtor shall forfeit his right to the exemption allowed by law if he is guilty of fraud in concealing from his creditors any part of his property at the time he seeks the benefit of the exemption, construed by the state Supreme Court to require the utmost good faith of an applicant for the exemption, and a full disclosure of all personal property owned by him at the time he seeks the exemption, a bankrupt seeking an exemption must deal with perfect frankness with his creditors and disclose and deliver all his property except the exemption and a failure to do so defeats his application, and a bankrupt, who just before and at the time of his bankruptcy sought to get his property out of the reach of his creditors, was not entitled to the exemption."

The section of the Code referred to deals with the $1,600 exemption, which is called "the constitutional homestead." The referee finds as a fact that the property he mentions was not included in the schedules as it should have been, and holds this sufficient to defeat the bankrupt's homestead. Findings of a referee on questions of fact will not be lightly disturbed, and the evidence here is, I think, sufficient to support the finding of the referee on this point, so that upon that ground alone the homestead would be defeated.

[3, 4] The referee further finds that:

"Immediately upon the setting apart of exemption by the trustee, on the 1st day of December, 1914, the bankrupt transferred all of the property included in the exemption, to wit, $1,575 in money, to Davenport Bros., of Chattanooga, Tenn., with the express intention, in said transfer, of preferring said Davenport Bros., over his other creditors. This was done, although, under the rule of court, the creditors have 20 days within which to file objections to the homestead."

In the case of Herrin & West (D. C.) 215 Fed. 250, a ruling was made by this court on this question of transfer of homestead exemption by the bankrupt prior to its approval by the referee. In the opinion in the Herrin & West Case, this was said (215 Fed. page 252):

"I think, and so hold, that to make a complete exemption, which would be transferable and title conveyed, there must be an approval by the referee of the exemption set apart by the trustee, or at least 20 days must elapse without any objections being filed to the allowance of the homestead. Whether in the latter case that is, where 20 days elapse without objections being filed, the title in the bankrupt would be complete it is unnecessary now to determine."

It appears from this record, and is conceded to be true, as I understand it, that G. R. Anderson, the bankrupt in this case, immediately upon the setting apart of cash to the amount of $1,575 to him as an exemption, transferred it to Davenport Bros., one of his creditors. As to that the referee says:

"This exemption was transferred to Davenport Bros. with the express intention, by said transfer, of preferring said Davenport Bros. over his other creditors."

The answer of the bankrupt in this case to the objections to the approval of the homestead by the referee contains the following:

"The bankrupt further shows that after said homestead had been so set apart to the bankrupt, to wit, on the 2d day of December, 1914, the bankrupt, in the exercise of the right conferred on him by law, transferred and assigned his said homestead to Davenport Bros., of Chattanooga, Tenn., preferring them as creditors, and he here attaches a copy of said transfer of said homestead as a part of his answer to said objections and sets up all the facts stated in said transfer as a part of his response to said objections."

A copy of the paper constituting this transfer from Anderson to Davenport Bros. is attached, and is as follows:

"Chattanooga, Hamilton Co., Tenn., Dec. 2, 1914.

"For and in consideration of the fact that I am indebted to Davenport Bros., a firm engaged in the mercantile business, located in Chattanooga, Tenn., to wit: One note due October 15, 1914, for $250.00; one note due November 1, 1914, for $250.00; one note due November 15, 1914, for $250.00; one note due December 1, 1914, for $250.00; one note due December 25, 1914, for $351.93—amounting to $1,351.93, besides an amount of $107.12.

"Said notes containing a waiver of my rights to homestead under the laws of Georgia, and whereas, under the laws of Georgia, an insolvent debtor may prefer and pay, or secure one creditor in exclusion of another, I hereby transfer, sell, convey, transfer and turn over to the said Davenport Bros., preferring them over my other creditors, my homestead, which has been set apart to me by the Trustee and Bankrupt court, in money, the same being the proceeds of my stock of goods out of which I asked my homestead to be set apart, and by consent and approval of the bankrupt court was sold, the money to be set apart as homestead instead of the goods, and the same set apart—$1,575.00.

"The trustee, R. H. Crawford, is directed and instructed to pay over said money to the said Davenport Bros.

"In witness whereof, I have hereunto set my hand and signature, this December 2, 1914.                                                  G. R. Anderson.

"Witnessed J. D. Trotter."

The effort in this paper clearly is to transfer this money constituting the homestead exemption to Davenport Bros. because they held notes containing waiver of homestead exemption. It has been so often held that this court has no control over the bankrupt's exemption for the purpose of distributing it among creditors holding waiver notes that it is unnecessary to discuss that now. A practice has grown up, which is fully recognized by the Supreme Court of the state in Bell v. Dawson Grocery Co., 120 Ga. 628, 48 S. E. 150, that when the homestead exemption here in this court is in money, and there is a claim to the fund by waiver note creditors, of paying the same over to a receiver appointed by the state court for the purpose of distributing the same among creditors of that class.

Under all the decisions, including Lockwood v. Exchange National Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061, this court cannot do any more than set apart the exemption and turn it over to the bankrupt, or some one duly constituted and appointed to receive it. Therefore I shall not attempt to decide in this case anything further than that: (1) By failure to make a full and fair disclosure of

his property in his schedules the bankrupt has deprived himself of the right to claim a homestead exemption; (2) that the bankrupt's exemption when set apart by the trustee is inchoate and not fully fixed in him until approved by the referee in bankruptcy. So, reversing the order of these findings, it is determined, first, that the bankrupt's exemption was not fully and completely set apart to him, that his right to the exemption was inchoate at the time he attempted to transfer it, and, second, that on account of his willful withholding of part of his property in the schedules, he should not be allowed an exemption.

The finding of the referee is therefore approved and confirmed.

### Rehearing on Objections to Homestead Exemption.

I have gone over the evidence taken in this case on July 5, 1915, and it does not change my opinion as to what should be done in the matter. The referee found, in addition to his finding on the piano, that the bankrupt failed to show satisfactorily what became of his other property and what he had done with what he had received from his business, and the only explanation of this in this latter testimony is that he turned over all of the property he had to his trustee.

The second objection, before the referee, to the allowance of the homestead, was that the bankrupt had failed to account for certain moneys collected by him during the months preceding the filing of the petition in bankruptcy, and was consequently guilty of unfair dealing. As to that the referee finds that:

"The affairs of the bankrupt, the management of his business for perhaps a year prior to the bankruptcy, seems to be involved in some obscurity. He does not make a very clear explanation of what he did with moneys collected, and what became of funds arising from the business. His explanation is not sufficient, in the opinion of the referee, to acquit him of the charge of unfair dealing. For a number of months prior to the bankruptcy he had bought large amounts of goods, and he does not clearly explain what became of the proceeds."

This I did not refer to in my former opinion. The failure to return the piano, which the referee found to be true, being sufficient without going into the other matters. But the finding of the referee on this second ground of objection to the exemption is sufficient, even if the testimony last taken, of the bankrupt and his wife, was sufficient to remove the difficulty about the piano, which seems to be doubtful.

[5] The great trouble here is this man's use of a beneficent statute, allowing an exemption to him for the benefit of his wife and children, to enable him to pay a debt and thereby prefer one of his creditors over his other creditors. True, the creditor thus sought to be preferred had a note for his debt with a waiver of homestead attached; but so, according to uncontradicted statements made here, did several other creditors. There was a considerable amount due, outside of the debt to Davenport Bros., for which there were waiver notes, and for the court to sit here and permit a statute, passed for the benefit of the bankrupt's family, to allow him enough after his bankruptcy to

support and care for them, to be used by the bankrupt for the benefit of one of his creditors in preference to all of the others, would not be right, and such practice should not be recognized and sanctioned by the courts.

In addition to this, when he attempted to transfer the homestead exemption, as I said before, the exemption was inchoate, and, the referee not having approved the exemption, it was not in such shape that the homestead was completed and made final as to the bankrupt and he had no right to transfer it in that situation.

Again, I am not overlooking the fact that all the bankrupt court has to do with the homestead exemption is to cut it out of the estate, set it apart, and turn it over to the bankrupt; but in this case the application for the exemption is accompanied with a showing that the bankrupt intends, and had already, for that matter, transferred his homestead to one of his creditors thereby preferring them. The fact that the transferee had a waiver note would cut no figure in this; for, if the court is to consider at all the question of waiver notes in connection with homesteads, it would turn them over to some person appointed by the state courts to distribute the same to all waiver note creditors equitably. I do not see how a proceeding like this and giving to a man a homestead exemption for the purpose of preferring a creditor with it can be entertained at all by the courts.

I must decline to reconsider in any way my action in confirming the referee's decision denying the exemption.