[Civ. No. 6692. First Appellate District, Division One.—February 25, 1929.]

M. LIBERMAN, Respondent, v. JAMES McDONNELL et al., Appellants.

Richard C. Harrison, Sidney Schlesinger and Sloss & Ackerman for Appellants.

Harry K. Wolff for Respondent.

THE COURT.—An action to recover the price agreed to be paid for 200 shares of the stock of the Southern States Oil Company, a corporation, which were sold by defendants on the New York Curb market.

The defendants, namely, James F. McDonnell, Hubert Mc-Donnell, Robert E. McDonnell, Harold L. Mack, Robert M. Ridley, Gilbert W. Cullen, and W. P. O'Connor, are co-partners doing a stock brokerage business under the name of McDonnell & Co., with offices in San Francisco and New York, the firm being an associate member of the New York Curb market. According to a stipulation filed by the parties, in which it was agreed that all the facts and documents set forth therein were true and should be considered in evidence for all purposes, the plaintiff on December 14, 1923, signed and delivered to defendants in San Francisco an order the material parts of which are as follows: "Sell for my account and risk, subject to the rules of the Exchange where executed, open stop 221 Southern States Oil 25, a/c M. Liberman. Good only for the above date unless otherwise specified." On the above date and for a few days thereafter the stock of said oil company was listed upon the Curb market mentioned and was bought and sold therein. On December 20th in San Francisco the plaintiff signed and delivered to the defendants a second order in the same form but canceling the above and directing the stock to be sold when and if the market price of the same fell to $30 per share. Each of the above orders was an open stop order directing the stock—which on the date thereof was quoted above the selling price mentioned therein—to be sold in the event and as soon as the market declined to that price. On December 21, 1923, the plaintiff at 8:14 o'clock A. M. San Francisco time instructed the defendants to cancel the second order and to sell the 221 shares at the market price. At 8:15 o'clock A. M. on the same date San Francisco time the defendants by telegraph directed their New York office to sell the stock in accordance with the plaintiff's instructions. The shares were on the same day offered for sale in the name of McDonnell & Co. upon the floor of the New York Curb market to the highest bidder. Within a few minutes thereafter defendants on the floor of the market received from the firm of Richards & Hutchinson Co., members of the market, an offer to buy 200 of said shares at $32 per share,

and from the firm of Warrick & Brady, also members, an offer to buy the remaining shares at $31.75 per share, both of which offers defendants accepted. The San Francisco office of the defendants at 8:23 o'clock A. M. of the same day, San Francisco time, received advices by telegraph of the above sales with the prices for which the stock had been sold, and immediately informed the plaintiff of the facts by telephone. They also on the same day mailed to the plaintiff a communication in writing, which he received on December 22, 1923, of which the following is a copy:

"Mr. M. Liberman, 12 Georgia street, Vallejo, Calif.

"San Francisco, December 21, 1923.

"In accordance with your instructions we have this day sold for your account and risk

| Quantity | Security | Broker | Price | Tax or Int. | Commis- sion | Amount |
|---|---|---|---|---|---|---|
| 21 | So. States Oil | Name on request | 31¾ | .12 | 3.15 | $ 663.48 |
| 200 | So. States Oil | | 32 | .80 | 30.00 | $6,369.20 |

"All orders for the purchase and sale of any article are received and executed with the distinct understanding that actual delivery is contemplated, and that the party giving the order so understands and agrees.

"It is further understood that on all accounts the right is reserved to close transactions without notice when protection is exhausted or so nearly so in our judgment as to endanger the account, and to settle contracts in accordance with the rules and regulations of the Exchange where orders are executed.—Memorandum only. E. & O. E.

"If not correct advise at once.

"Respectfully,

"McDONNELL & Co., per ———."

On the day he received the above telephonic communication the plaintiff mailed to the defendant four temporary certificates representing the 221 shares mentioned, two being for 100 shares each and two representing ten and eleven shares respectively, each indorsed by the plaintiff in blank. With the same was enclosed the following letter:

"Gentlemen:

"I am herewith enclosing 221 shares Southern States Oil which you have sold for me to-day. These shares are prop-

erly endorsed by me and you may mail me check for same as soon as convenient.

"Thanking you for your prompt and good service, and wishing you the season's greetings,

"Very truly yours,

"MEYER LIBERMAN."

The certificates were received by the defendants in San Francisco on December 22, 1923, and on the same day were forwarded by registered mail to their New York office, where they arrived on December 27, 1923. On December 26, 1923, at 10 o'clock A. M., New York time, at the opening of the regular session of the New York Curb market, all trading in the stock of the Southern States Oil Company was by the governors of the market suspended, and at 11 o'clock A. M. on the same day the firm of Richards & Hutchinson Co., having announced its inability to meet its obligations, was suspended from membership therein. These facts were on the same day communicated by telegraph to defendants' San Francisco office, and the plaintiff was by telephone immediately advised thereof. On that day the defendants also mailed to the plaintiff the following letter, by mistake dated December 20, 1923, which he received on December 27, 1923: "Dear Sir:—

"On December 21st, we notified you that we had sold for your account and risk 200 shares Southern States Oil at 32. On December 22nd you delivered to us against this sale certificates Nos. 2468 and B5410 for 100 shares each, which we in turn forwarded to New York in order to make delivery to the broker to whom they were sold for your account. We are notified by our New York office this morning that trading has been suspended in this stock, and that Richards and Hutchinson, the house to whom we sold your 200 shares, ctfs. Nos. 2468 and B5410, had failed this morning. The certificates which you delivered to us on December 22nd were forwarded to New York the same day. We cannot pay the proceeds from the same until delivery has been accepted by the broker to whom sold, thereby consummating the sale. In this case the broker to whom the stock was sold failed before the stock which you delivered to us on December 22nd could be delivered to him in New York, and consequently we have had to cancel the notification of sale sent

to you on December 21st. The above 200 shares will be returned to you when returned to us from New York.

"Yours very truly,

"McDonnell & Co."

In reply the defendants were notified that the plaintiff refused to accept a return of the certificates and, according to the stipulation, the same are now at the San Francisco office of the defendants.

It appears that the selling price of the twenty-one shares sold to Warwick & Brady was duly collected by defendants and paid to the plaintiff. This item is not involved in the controversy.

The concluding paragraph of the stipulation, which was dated October 30, 1925, is as follows: "There has been no trading in Southern States Oil on the New York Curb since December 26, 1923. From time to time since that date at other places in the city of New York shares of such stock have been dealt in at various prices, the highest price at which during such period such shares were sold having been $12.00 per share, and the lowest price at which during such period such shares were sold having been 37½ cents per share. The price at which shares were sold most recently was 37½ cents per share. There is at present no market for such shares."

The claim of the plaintiff to recover the selling price of the stock from the defendants is set forth in his complaint in three separate counts, namely, an account for money had and received to plaintiff's use; another for the agreed price of goods sold and delivered, and the third upon an account stated. The court found for the plaintiff and entered its judgment accordingly.

Defendants as grounds for reversal contend that the findings are unsupported.

The findings here material are the following:

"7. On the 14th day of December, 1923, plaintiff, having had some previous transactions with defendants at their San Francisco office, entered into an agreement with defendants by telephone to sell for him for cash 221 shares of Southern States Oil upon condition that he was to receive full payment therefor, either by cash or cash credit upon their books, immediately upon indorsement and delivery of

certificate at their San Francisco office. This arrangement was agreed to by defendants.

"8. That all the conversations, dealings and transactions with the defendants so far as the sale of Southern States Oil stock was concerned were had between the plaintiff herein and one Roy J. Malfanti, a duly authorized employee and representative of defendants.

"9. That on December 21, 1923, the defendants, through their duly authorized agent and representative, notified plaintiff by telephone from San Francisco to Vallejo, California, that said plaintiff's 221 shares of Southern States Oil had been sold by defendants for the sum of $7,032.68, and requested plaintiff to immediately bring or send in the indorsed certificate, and stated that defendants would immediately upon receipt of same at their San Francisco office pay plaintiff in cash the full sale price thereof or give him cash credit for said amount upon the books of defendants. This arrangement was agreed to and accepted by him.

"10. That all papers and documents signed between the parties and introduced in evidence were merely executed as forms with the intent and object of all the parties of carrying out and performing the terms of the oral arrangements made between the parties on December 14, 1923, as set forth in finding 7 hereof, and confirmed by the arrangements of December 21, 1923, as set forth in finding 9 hereof."

It was further found that defendants inserted the firm's name above the indorsement of the defendant upon the certificates, sold the stock as theirs and not as the agent, representative, or broker of the plaintiff; that the stock was purchased by the defendants as their own property, and an unconditional credit for the purchase price thereof given to plaintiff on their books. The court also found that it had been the custom and practice of defendants in dealing with their customers to pay the latter the sale price of stock sold immediately upon notification of the sale and the delivery to them at San Francisco of the certificates therefor indorsed in blank; also that the defendants sent to the plaintiff a statement in December, 1923, showing a cash balance in his favor of the selling price of the stock, which he accepted as correct, and that although he was notified on December 26, 1923, that the account had been debited with the amount

representing the selling price of the 200 shares, namely, $6,369.20, such action was without his consent.

Contrary to what might be implied from the language of finding No. 7, the evidence shows without dispute that no stock had been sold by defendants for the plaintiff previous to the transaction in question, their only dealings having been purchases for his account. While the testimony of the latter supports the finding that an oral authorization for the sale of the stock was made by telephone on December 14, 1923, the stipulation shows that on the same day the plaintiff signed a written authorization to sell under conditions stated for his account and risk, which is set forth above, this being followed by a second writing of the same tenor on December 20th, and a telephonic authorization on December 21st to sell at the market. Moreover, the record contains no evidence reasonably supporting finding 10, that all papers and documents signed by the parties were forms merely. On the contrary, it is evident from the care taken by the parties to reduce their agreements and instructions to writing where time permitted that the same were intended to have their normal legal weight and effect. The evidence shows that defendants in two subsequent transactions paid the selling price of certain stock sold for the plaintiff upon delivery to them of the indorsed certificates therefor; and it was testified by two witnesses called by the plaintiff that the same course was followed in transactions had by them with other brokers, and also that such was the custom. Defendants denied that it was customary to make such payments, and testified that the practice was to pay the principal only after collection of the selling price unless he had a credit balance with the broker. While the court from this evidence found that such had been the custom and practice of the defendants, the question was not in issue in the action, no payment having been made by the brokers. That an entry was made upon the books of the defendants by which the plaintiff was credited with the selling price of the shares is admitted, but, as stated, defendants were notified from their New York office two days thereafter and before the indorsed certificates reached New York that the buyer had failed, following which a counter or debit entry of the amount was made and the plaintiff immediately advised of the facts.

■ In connection with the finding that defendants inserted the firm name above that of the plaintiff after the latter had indorsed the certificates, and that the sale on the Curb market was made in the firm name, not only was the sale made before the indorsement, but by agreement it was to be made subject to the rules and regulations of the exchange. Undisputed evidence shows that according to these rules members deal with one another as principals, and such is the general rule among brokers in transactions on the floor of the exchange, their principals not being disclosed (*Horton* v. *Morgan*, 19 N. Y. 170 [75 Am. Dec. 311]; *Banta* v. *City of Chicago*, 172 Ill. 204 [40 L. R. A. 611, 50 N. E. 233]; *Northrup* v. *Shook*, 10 Blatchf. 243 [Fed. Cas. No. 10,329]; 2 Dos Passos on Stockbrokers and Stock Exchanges, 2d ed., p. 749 et seq.; 9 Cor. Jur., p. 511, Brokers, sec. 12). This, however, does not change the relation between the broker and his principal. As to the latter he is still an agent (*Hadfield* v. *Tracy*, 101 Conn. 118 [34 A. L. R. 581, 125 Atl. 199]; *Tuckerman* v. *Mearns*, 262 Fed. 607 [49 App. D. C. 153]), and the effect of the above rule or custom, which was designed to facilitate the business of the exchange, is not to constitute the broker a purchaser from his principal.

In the present case each order signed by the plaintiff directed the sale to be made for his account and risk; and after the sale on the exchange had been made, but before the certificates had been indorsed or delivered, he was notified in writing that the contract of sale had been so made. To this he expressed no dissent, and in his letter of December 21, 1923, set forth above, with which was inclosed the indorsed certificates, appears the following: "I am herewith enclosing 221 shares of Southern States Oil which you have sold for me to-day." It was not until after the failure of the purchasers and a sharp decline in the market price of the stock that a claim or suggestion was made that the same had been purchased by the defendants, this contention, as stated above, being based upon the promise by defendants' employee that immediately upon the indorsement and delivery of the certificates the plaintiff should be credited with the selling price or a check mailed for the amount, and the fact that a credit entry was so made on their books. ■ The promise and the credit entry were manifestly made upon the assumption that the purchaser would per-

form; and while a broker is bound to exercise reasonable care and diligence in transactions in which he is employed, it is not claimed that defendants were wanting in these respects or that the plaintiff, in reliance either upon the promise or the book entry, in any way changed his position.

The evidence was insufficient to support an action either upon an account stated or for money had and received. Moreover, neither the stipulation nor the testimony discloses any facts which reasonably justified the conclusion that there was a sale of the stock to the defendants, that the promise to make the credit entry or to send a check for the amount of the selling price upon receipt of the indorsed certificates or a credit entry subsequently made was intended or understood as an unconditional promise to pay, or as an acknowledgment of an obligation not dependent upon performance by the firm of Richards and Hutchinson Co.

After an examination of the entire record, including the evidence, we are of the opinion that the conclusions of the trial court cannot be sustained and that the result was a miscarriage of justice.

The judgment is accordingly reversed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 27, 1929.