**Herbert TEPPER, Appellant,**

v.

**Frank H. CHICHESTER, Trustee in Bankruptcy of the Estate of Bennett-Manning Co., Bankrupt, Appellee.**

**No. 16572.**

United States Court of Appeals
Ninth Circuit.

Dec. 6, 1960.

Rehearing Denied Feb. 1, 1961.

Pope, Circuit Judge, dissented.

Nathan Goller, Los Angeles, Cal., for appellant.

Gendel & Raskoff, Arnold M. Quittner, Los Angeles, Cal., for appellee.

Before CHAMBERS and POPE, Circuit Judges, and KILKENNY, District Judge.

KILKENNY, District Judge.

Appeal from an order of the District Court denying appellant's petition to reclaim thirty shares of the capital stock of Ford Motor Company. The right of reclamation is claimed under § 60, sub. e, of the Bankruptcy Act (11 U.S.C.A. § 96, sub. e) and under common law. The order adopted the findings of fact and conclusions of the referee.

From the findings of the referee, we gather these facts. Bennett-Manning Co., the bankrupt, was a licensed stockbroker. On and prior to October 23, 1958,[1] appellant was the owner and in possession of thirty shares of the capital stock of Ford Motor Company and on and prior to such date requested the bankrupt to sell said stock on behalf of appellant. On October 24 the bankrupt, as a stockbroker, sold on behalf of appellant said shares of stock and on said date bankrupt executed and transmitted to appellant a written confirmation of sale of said stock for a total sales price of $1337.77. On October 28 the appellant delivered to bankrupt, endorsed in blank, his stock certificate representing the said thirty shares of stock, said delivery being made after receipt of the written confirmation of sale above mentioned.

The bankruptcy proceedings were commenced on November 4, at which time the bankrupt still had said certificate in its possession. The customers ledger book kept by the bankrupt contained a page designated for appellant. This page reflects said sale on October 24 of said shares for the total sales price of $1337.77, and the receipt on October 28 of said shares from appellant. The ledger entry on October 24 credits appellant with said sum, and reflects an outstanding balance, in said amount, in favor of appellant from October 24 to and including the date of the bankruptcy. The bankrupt has not paid appellant said sum.

Specific findings of the referee, approved by the District Court, included all of the above and a finding that on and after October 24, the bankrupt was indebted to appellant in said sum, and was so indebted as of the date of the commencement of the bankruptcy proceedings. There was a further finding approved by the Court that on the date of the commencement of the bankruptcy proceedings, the appellant was not entitled to the immediate possession of said stock certificate.

Appellant makes three contentions:

1. That he is a customer of the broker and was entitled to immediate possession of the stock certificate without payment of any sum to the stockbroker and therefore a "cash customer" within the mean-

---

1. All dates in 1958 unless otherwise indicated.

ing of § 60, sub. e(1, 2, 4) of said Bankruptcy Act.

2. That without resorting to the Bankruptcy Act, title to the stock certificate never passed to the bankrupt, in that bankrupt was appellant's agent.

3. That a construction of § 60, sub. e, of the Bankruptcy Act which would place title to the stock in bankrupt would constitute a taking of the appellant's property without due process of law in violation of the Fifth Amendment to the Constitution of the United States.

If appellant was a "cash customer" within the meaning of the Act, Points 2 and 3 are academic.

1. Prior to the passage of the Chandler Act, the Bankruptcy Act of 1938, the bankruptcy courts followed the applicable state law on the subject in controversy. Generally speaking, the states adopted two conflicting views. One was the Massachusetts rule. This rule, under circumstances such as we have here, established a debtor-creditor relationship between the broker and the customer, and title to the shares vested in the broker. The other was known as the New York rule, under which the broker was considered the agent of the customer and he was regarded as the owner.

Section 60, sub. e(1) of the Bankruptcy Act of 1938, 11 U.S.C.A. § 96, sub. e(1), defines a cash customer as follows:

" * * * 'cash customers' shall mean customers entitled to immediate possession of such securities without the payment of any sum to the stockbroker;"

Subdivisions (2) and (4) of said § 60, sub. e, set forth the qualifications which a stockholder must meet in order to reclaim his securities. Subdivision (2) of the said section provides, among other things:

"All property at any time received, acquired or held by a stockbroker from or for the account of customers, except cash customers who are able to identify specifically their property in the manner prescribed in paragraph (4) of this subdivision and the proceeds of all customers' property rightfully transferred or unlawfully converted by the stockbroker, shall constitute a single and separate fund; and all customers except such cash customers shall constitute a single and separate class of creditors, entitled to share ratably in such fund on the basis of their respective net equities as of the date of bankruptcy; * * * "

Subdivision (4) provides in part:

"No cash received by a stockbroker from or for the account of a customer for the purchase or sale of securities, and no securities or similar property received by a stockbroker from or for the account of a cash customer for sale and remittance or pursuant to purchase or as collateral security, or for safekeeping, or any substitutes therefor or the proceeds thereof, shall for the purposes of this subdivision e be deemed to be specifically identified, unless such property remained in its identical form in the stockbroker's possession until the date of the bankruptcy, * * * "

■ One of the primary objectives of the framers of this section of the Act was to eliminate, insofar as possible, the previous conflict and adopt a statute which would create uniform rules throughout the nation. The legislative history of the enactment makes it clear that Congress intended to provide an exclusive procedure for determining conflicting claims between the broker's customers. In re McMillan, Rapp & Co., 3 Cir., 1941, 123 F.2d 428, 138 A.L.R. 765; 39 Col.L.Rev. 485, 490–491; 3 Collier on Bankruptcy, 14th Ed., par. 60.71, 60.72 and 60.73. McMillan, by way of dictum, stresses the statutory distinction between cash and marginal customers. Since "marginal" is not mentioned in the legislation, the comment is not justified.

■ In order for appellant to reclaim the shares under Point 1, he must show: (a) that he was a customer of the broker; (b) that he was entitled to im-

mediate possession at the time of the bankruptcy without payment of any sum to the stockbroker; and (c) that the property could be identified. We hold that the appellant was a customer and that the shares could have been identified. The referee found: that the appellant requested the broker to sell the shares; that the broker sold the same, confirmed the sale with the appellant, who thereafter delivered to broker the stock certificate, endorsed in blank; that on the date of the bankruptcy the bankrupt (broker) was indebted to appellant for the sales price of the shares and the appellant was not entitled to the immediate possession of such shares. The only findings of fact seriously challenged by the appellant are those with reference to the right of possession and the existence of the indebtedness from bankrupt to appellant. Appellant urges that he was entitled to the immediate possession of the shares at the time of the bankruptcy and that at such time bankrupt was not indebted to appellant. On review by this Court, we are required to accept the referee's findings unless they are clearly erroneous. Phillips v. Baker, 5 Cir., 1948, 165 F.2d 578; Porterfield v. Gerstel, 5 Cir., 1957, 249 F.2d 634; In re Gerber, 9 Cir., 186 F. 693. In reclamation proceedings, the findings of the referee on questions of intent, purpose, possession and the nature of the dealings between the parties are questions of fact, or in some instances, mixed questions of law and of fact, and the findings of the referee as approved and confirmed by the District Judge will not be set aside on anything less than a demonstration of clear mistake in applying the law. Kowalsky v. American Employers Insurance Co., 6 Cir., 1937, 90 F.2d 476; First National Bank of Portland v. Dudley, 9 Cir., 1956, 231 F.2d 396; 4 Collier on Bankruptcy, 14th Ed., par. 70.39. In a case such as this, where there is no real dispute as to the facts, we may examine the issues and arrive at our own conclusions from such given state of facts. Costello v. Fazio, 9 Cir., 1958, 256 F.2d 903.

We agree with the findings of the referee, and, therefore, accept and affirm his findings, and make those findings our own. In addition the record discloses that the purchaser of the stock confirmed the purchase and after the bankruptcy, notified the bankrupt that it would "bust" the sale if the shares were not delivered within a specified time.

If bankruptcy had not intervened, the appellant might have been entitled to reclaim his property. Liberman v. McDonnell, 97 Cal.App. 171, 275 P. 486; Meadows v. Clark, 33 Cal.App.2d 24, 90 P.2d 851; § 1 Uniform Stock Transfer Act; § 2466, California Corporations Code.

■ However, the provisions of the Federal Bankruptcy Act are superior to all state laws upon the subject and suspend those laws insofar as they are in conflict with the Act. West Coast Life Insurance Co. v. Merced Irrigation District, 9 Cir., 1940, 114 F.2d 654, certiorari denied Pacific Nat. Bank of San Francisco v. Merced Irr. Dist., 311 U.S. 718, 61 S.Ct. 441, 85 L.Ed. 467.

■ We are not construing state law, but an Act which was intended by Congress to replace and supersede all state law on the subject. To resort to state law would defeat the very purpose of the enactment. Insofar as we are advised, there might now be pending, or might be prosecuted in the future, an action by the purchaser of the shares against the trustee for failure of delivery. Under the facts of this case, the appellant was not entitled to the immediate possession of such shares and the relationship of debtor and creditor existed between appellant and the bankrupt. He was not a "cash customer."

■■ 2. Since, in our opinion, § 60, sub. e, of the Act is exclusive and supersedes the common law, the question of whether the bankrupt was the appellant's agent is moot. Likewise, we do not feel that § 70 of the Act, 11 U.S.C.A. § 110, is of any help to the appellant.

■ 3. Appellant challenges the constitutionality of said section if it is con-

strued so as to place title to the shares in the bankrupt. Appellant cites no authority in support of his position. We must keep in mind that this section was enacted in 1938. The section had been in existence for twenty years at the time appellant made his contract with the bankrupt in 1958.

Applied to this state of facts, the legislation is constitutional. Wright v. Vinton Branch, 300 U.S. 440, 457, 57 S.Ct. 556, 81 L.Ed. 736; Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593.

The order of the District Court is affirmed.

POPE, Circuit Judge (dissenting).

My inability to concur in the opinion stems from my disagreement with the opinion's basic holding to the effect that the rights of the appellant are not to be judged by reference to California law but that in some manner, not spelled out in the opinion, the federal bankruptcy act makes the California law inapplicable.

Thus the opinion states "If bankruptcy had not intervened, the appellant might have been entitled to reclaim his property." (Here citing California decisions.) Then it proceeds to state that the provisions of the Bankruptcy Act "are superior to all state laws upon the subject and suspend those laws insofar as they are in conflict with the Act." In my view such a statement is completely inapplicable here where the crucial language of § 60, sub. e, is as follows: " 'Cash customers' shall mean customers entitled to immediate possession of such securities without the payment of any sum to the stockbroker." It is my view that in determining whether a customer is or is not "entitled to immediate possession" we must be guided by state law.

The applicable language just quoted and that in subdivision (2) of subsection e, which refers to cash customers, does not say that a person in the position of this appellant shall not be entitled to immediate possession. It leaves that question to state law. This proposition is so commonplace that I would think it ought to be taken for granted. Thus in Heffron v. United States Machinery Co., 9 Cir., 166 F.2d 1023, this court affirmed and approved the reasoning used by Judge Yankwich in his able opinion in the same case, In re Quartz Crystal Products Co., D.C., 71 F.Supp. 949, 950: "And here I must call attention to a fault which is apparent in many of these reviews, i. e., that counsel, who specialize in bankruptcy, especially those who appear for Trustees, seem to rely too much on general 'equitable bankruptcy principles' contained in Collier and Remington, and pay too little attention to the fact that contractual rights in bankruptcy are determined by the laws of California and the decisions interpreting them. * * * In the case before us, the Referee was induced to disregard binding California law entirely."

This rule, which has a very general application, should have special application to § 60, sub. e, for the reason that the congressional intent is clarified by very different language which was used in subdivision (5) of that same subsection. There in dealing with a very different subject, namely, the recovery of the subject of voidable transfers, the subsection provides for rules governing such recovery adding "the laws of any State to the contrary notwithstanding." The fact that this express language is used in a different part of the subsection demonstrates that it must have been understood that the right of a customer to the immediate possession referred to in subdivision (1) must have been intended to be governed by local law, this being an application of the familiar *expressio unius* rule.[1]

---

1. That in a situation of this kind state law must be looked to in order to determine what property passes to the trustee is a rule of very general application. For instance, § 70, sub. a, (Title 11 § 110, sub. a), recites in general terms the various types of property which pass to the trustee. Illustrative of these are subdivision (5)—"Property, including rights of action, which prior to the filing

If I understand the opinion correctly, it concedes that if appellant's rights were to be judged by state law, then he would be held to be a person "entitled to immediate possession of such securities without the payment of any sum to the stockbroker." This portion of the opinion to which I have referred cites the case of Liberman v. McDonnell, 97 Cal. App. 171, 275 P. 486, 489. That case discloses that although a stockbroker may usually function as a person representing an undisclosed principal, yet this "does not change the relation between the broker and his principal. As to the latter he is still an agent." The broker is not a purchaser from his principal.

In my opinion the findings which the trial court adopted cannot stand in the face of the fact that they do not negative certain other facts shown by the record or to be inferred therefrom and which have a direct bearing upon the proposition that as a matter of state law appellant was entitled to the immediate possession of his stock. The record shows that the stockbroker filed his voluntary petition in bankruptcy on November 4, 1958, and the only reasonable inference from this fact is that he was not only insolvent on that day but that he must have been insolvent on October 28, seven days previous to that date when appellant delivered the stock certificate to him, and insolvent on October 24, 1958, when the written "confirmation" was made.[2]

These inferences of insolvency at these dates prior to the filing of the petition are inferences which the referee should have drawn. Under General Order in Bankruptcy 37, 11 U.S.C.A. following section 53, the Rules of Civil Procedure, 28 U.S.C.A., are applicable to proceedings before the referee; and under civil rule 43(a) evidence is to be admitted which is admissible under the rules of evidence applied in the courts of the United States and hearings of suits in equity.

The federal courts have generally recognized the propriety of proof of the existence of a condition at a given date by evidence of its subsequent existence. See Wigmore on Evidence, 3d ed., § 437, cited with approval by this court in Allen v. Matson Navigation Co., 9 Cir., 255 F. 2d 273, 281. That rule is one which applies in suits in equity as well as in cases at law.[3]

In this connection it is important to notice the significance of the financial condition of the stockbroker as bearing upon the propriety of his continuing to function as an agent. It is common knowledge that stockbrokers transact business in their own names. It is understood that they represent principals, but the identity of the principal is ordinarily undisclosed. In this case if the appellant first delivered the stock certificate to the stockbroker and the stockbroker then passed it on to the purchaser, appellant would be primarily interested in the financial responsibility of the

---

of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered." Whether in a given case a particular item of property comes within such a definition is to be determined exclusively under state law. Corn Exchange Nat. Bank & Trust Co., Philadelphia v. Klauder, 318 U.S 434, 436, 63 S.Ct. 679, 87 L.Ed. 884; Holt v. Crucible Steel Co., 224 U.S. 262, 265, 32 S.Ct. 414, 56 L.Ed. 756; Adelman v. Centaur Corporation, 6 Cir., 145 F.2d 573; Cohen v. East Netherland Holding Company, 2 Cir., 258 F.2d 14, 16. See also Collier on Bankruptcy, 14 ed., § 60.39: "It is evident that, under § 60a, the determination of when a transfer is perfected de-

pends almost wholly on state law (using 'state' to include the District of Columbia, and the territories and possessions to which the Act is applicable)."

2. Title to the shares never passed. Calif. Corp.Code, § 2466. Cf. Liberman v. McDonnell, supra. It remained in appellant. Cf. Thomas v. Taggart, 209 U.S. 385, 28 S.Ct. 519, 52 L.Ed. 845; Kier v. Burch, 9 Cir., 284 F. 714.

3. As noted by Wigmore, § 382, it applies to proof of a condition of solvency or insolvency. See Harlin v. Calvert's Adm'x, 253 Ky. 752, 70 S.W.2d 524, 525, where it was held that a bank's insolvency in January, 1932, was evidence of its insolvency in June, 1931.

stockbroker to account for his money. In short, this was an agency involving trust and credit in financial affairs, and such an agency is terminated by the bankruptcy or insolvency of the agent. As stated in Restatement of the Law of Agency 2d, § 113, "The bankruptcy or insolvency of an agent terminates his authority to conduct transactions in which the state of his credit would so affect the interests of the principal that the agent should infer that the principal, if he knew the facts, would not consent to the further exercise of the authority."

It is plain therefore that since the agent must have been insolvent on October 28 when the certificate was delivered to him, as well as insolvent on October 24, when the memorandum of sale was made, the agent's authority to act for appellant had terminated. It was his duty to return or not to accept the certificate; it was his duty not to make any contract of sale for he had no such authority.

It should be noted that here we are dealing with the question of what were the rights of the parties under state law as between the principal and the agent. Of course there may be cases in which the third person might obtain rights to property through unauthorized acts of an agent where the circumstances are such as to create something in the nature of an estoppel as against the principal. No such problem arises here for the purchaser is claiming nothing, since he "busted the trade".

It seems to me therefore that the intended agency was terminated before it was ever executed and that no valid contract to sell to the purchaser, one Geisel, was ever made. It should be held therefore that the appellant was a cash customer "entitled to immediate possession of such securities without the payment of any sum to the stockbroker." The securities remained in their identical form in the stockholder's possession and the appellant was entitled to them for they were his.

My construction of the applicable law and interpretation of the facts, if accepted, would avoid the necessity of examining the very serious question of whether Congress could validly enact the type of legislation which the opinion says was accomplished here. The existence of this question of validity in the background of any such case was commented upon in In re McMillan, Rapp & Co., 3 Cir., 123 F.2d 428, 432, 138 A.L.R. 765: "It is one thing for Congress in the exercise of its constitutional power respecting bankruptcies to promote equality among claimants of the same standing, but it would be quite a different thing for Congress to defeat arbitrarily an independent property right by appropriating the ascertainable and unpledged property of one person for the augmentation of the bankrupt estate of another, merely because the former's property happened to be found in the possession of the latter." The doubtful constitutionality of any such provision as that read into this section by the opinion is discussed in Collier on Bankruptcy, 14th ed., § 60.73, pages 1087, 1088. If we reached the question of constitutionality here, I would be inclined to agree with Collier. The cases cited in the opinion, relating to the Frazier Lemke Act, are not in point.

Apart from the question of constitutionality, to my mind it is really startling to think that the owner of stock in the position of this appellant can be divested of that which is his in any such manner as is here suggested. I cannot believe that Congress intended any such result. A more reasonable key to the Congressional intent is suggested in In re McMillan, Rapp & Co., supra,—namely that the statute, § 60, sub. e, merely draws a distinction between cash customers, owing nothing on identifiable shares, on the one hand, and margin customers, on the other. The opinion rejects this suggestion on the ground that the word "marginal" is not used in the section. But the legislative history of the enactment, contained in House Report No. 1409, 75th Cong., 1st Sess., 1937, submitted by the committee which was headed by Mr. Chandler, the sponsor of the bill, shows that the distinction suggested

in the McMillan, Rapp & Co. case was precisely the point of the legislation.[4]

Consideration of this legislative history seems to me to make it plain that the intent was that any customer who was not a margin customer, who could identify his property in its original form would qualify as a cash customer entitled to specific reclamation. When the statute is so construed the court avoids the question of constitutionality, as it should.

---

**4.** Page 31 of that report, under the heading of "Stockbrokers" discloses that a prime purpose of the legislation was to provide a more equitable treatment for "margin customers".

See, also, 24 Minn.L.Rev. 52, 57–58, note 29, which quotes the testimony before the House Committee given by Mr. Harry Zalkin, a member of the National Bankruptcy Conference, and a draftsman of this section, as follows: "Under [§ 60]e(2) it is provided that cash cus-

tomers unable to identify their property, as prescribed in clause 4, shall be classified with margin customers, and for the purpose of securing equality of treatment of margin customers and such cash customers, they shall participate ratably in a single and separate fund comprised of all property acquired by the broker from the beginning of his insolvency from or for margin customers and such cash customers."