599 F.2d 551
 5 Bankr.Ct.Dec. 246, Bankr. L. Rep. P 67,124,
26 UCC Rep.Serv. 489
 In the Matter of PARAGON SECURITIES COMPANY, a New Jersey
Corporation, Paragon Securities Company of New York, a New
York Corporation, Municiplex Funding, Inc., a New Jersey
Corporation, Paragon Life Agency, Inc., a New Jersey
Corporation, Paragon Insurance Agency, a New Jersey
Corporation, Nelson Stousland School, Inc., a New Jersey
Corporation, and Paragon Securities Company of Florida, a
Florida Corporation, Bankrupts,
Pearl Levine, Appellant.
 No. 78-2127.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 20, 1979.
Decided May 18, 1979.
 
 Garrett M. Heher (argued), Steven R. Lane, Ann Reichelderfer, Smith, Stratton, Wise & Heher, Princeton, N. J., for appellant.
 Frank J. Vecchione (argued), Crummy, DelDeo, Dolan & Purcell, Newark, N. J., for appellee.
 Before ROSENN, Van DUSEN, and GARTH, Circuit Judges.OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 This appeal concerns the recurring and difficult question of ownership of negotiable securities found in the control of a stockbroker upon his insolvency. The problem arises out of the practice of brokerage houses engaged in securities trading and underwriting to carry on their extensive business activities not only with their own funds but also with borrowed money collateralized by securities purchased for, and fully paid by, their customers. Paragon Securities Company ("Paragon"), a New Jersey corporation, had been engaged in the business of buying and selling securities, primarily municipal bonds. Its sudden demise in August 1973 left a flurry of distraught customers' claims to securities under Paragon's control at the time it so ignominiously expired. See, e. g., In the Matter of Paragon Securities Co., 589 F.2d 1240 (3d Cir. 1978). Among the claims is one of Pearl Levine, a disenchanted customer of Paragon, who filed a reclamation proceeding against the trustee in bankruptcy for certain bearer bonds. The bankruptcy judge applied section 60e of the Bankruptcy Act, 11 U.S.C. § 96(e) (1976), and denied her claim. On appeal, the United States District Court for the District of New Jersey affirmed.
 
 
 2
 Levine appealed from the judgment of the district court to this court claiming that state law, not the Bankruptcy Act, should govern her claim and that under either state or federal law she is entitled to reclamation. We are constrained to disagree and we affirm the judgment of the district court.
 
 I.
 
 3
 In its trading of bonds and securities, Paragon engaged Securities Processing Services ("SPS"), a New York corporation which functioned as a private clearing facility for municipal bond dealers. SPS received all of the bonds purchased by Paragon, and upon specific instructions from Paragon would either deliver the bonds to Paragon's customers or retain them in SPS vaults in one of three accounts it maintained for Paragon.
 
 
 4
 The first account ("98" account) contained all of the major new issues which Paragon had purchased or underwritten. The "46" account was also a general inventory account, but included secondary or old market issues. The third ("124" account) was for customer safekeeping. The bonds in this account, unlike the other bonds, were tagged and identified as belonging to the specific Paragon customer who had purchased them.
 
 
 5
 In addition to serving as a private clearing house, SPS often advanced money to Paragon for purchases of bonds. As collateral for these loans, SPS held a lien interest in the securities comprising the "98" and "46" accounts. It does not appear that Paragon's customers whose bonds were held in the general inventory accounts were aware that their bonds were being used in this manner.
 
 
 6
 Levine maintained a trading account with Paragon and traded bonds with some frequency. On February 21, 1973, she purchased $30,000 of Marion County bonds bearing an interest rate of 8 1/4 percent and due March 1, 1990, for a total price of $32,412.30. The purchase order provided that the bonds were to be held by Paragon. The bonds were delivered to SPS on June 6, 1973, and were placed in the general inventory account. In letters dated June 1 and July 2, Levine requested that Paragon deliver the bonds to her. Unhappily for Levine, Paragon's failure to respond promptly to these requests led to her subsequent undoing and this litigation.
 
 
 7
 On August 1, 1973, Paragon filed a petition for voluntary dissolution in the New Jersey state court and obtained the appointment of a receiver. The following day SPS received instructions from Paragon to ship the Marion County bonds to Levine. Before the preparations for delivery could be completed, however, the receiver cancelled the instruction. On August 6, 1973, an involuntary petition in bankruptcy was filed in the United States District Court for the District of New Jersey, and on August 28 Paragon was adjudicated a bankrupt.
 
 
 8
 Upon learning of Paragon's precarious financial position, SPS promptly moved to protect its position and sold a major portion of the bonds in the general inventory account to satisfy Paragon's debt to SPS. Unfortunately, the bonds sold included many which had been fully paid for by Paragon's customers but had not been delivered or transferred to the customers' safekeeping account. SPS sold bonds having an approximate face value of $1,600,000 and only turned over to the bankruptcy trustee $670,000 worth of bonds, including $30,000 of Marion County bonds. However, customer claims against the trustee to be satisfied by these bonds aggregated $1,800,000. Levine filed a complaint in bankruptcy court seeking reclamation of the Marion County bonds.
 
 II.
 
 9
 We must first determine whether section 60e of the Bankruptcy Act,11 U.S.C. § 96(e) (1976),[1] is applicable. Section 60e governs the liquidation of bankrupt stockbrokers. It divides customer claimants into three classes:
 
 
 10
 (1) Cash customers who are able to specifically identify their securities in accordance with the provisions of section 60e(4). These customers are permitted reclamation of their securities.
 
 
 11
 (2) All other customers. The property of these customers constitutes a single and separate fund for the payment of these claims on a pro rata basis.
 
 
 12
 (3) General creditors. This class includes those customers whose claims cannot be fully satisfied from the single and separate fund.
 
 
 13
 A prerequisite to the applicability of section 60e is a finding that the bankrupt was a stockbroker, a term left undefined by the statute. Without providing a specific definition, the bankruptcy judge in this case concluded that the Paragon-Levine relationship was that of stockbroker-client.
 
 
 14
 Here the bankrupt set up a trading account for the plaintiff; it traded the claimant's bonds to satisfy other customers' orders, as it did when it sold her New York City bonds; it received and held cash for the sole purpose of trading bonds, as it did when it sold the plaintiff's Lake of Egypt bonds and held the money until it could purchase the Tama, Iowa bonds; it paid the plaintiff interest on the monies so held for her account. Certainly these are not the practices of a principal but those of a stockbroker, and clearly establish the bankrupt as a § 60e stockbroker for purposes of this claim.
 
 
 15
 We agree with Judge Commisa's reasoning. We believe that a stockbroker should be defined as any person "engaged in the business of effecting (securities) transactions for the account of others."[2] This broad definition advances one of the congressional purposes which inspired section 60e the elimination of prior conflicts in state law and the establishment of a uniform law nationwide. See Tepper v. Chichester, 285 F.2d 309, 311 (9th Cir. 1960); In re McMillan, Rapp & Co., 123 F.2d 428, 429-30 (3d Cir. 1941); 3 Collier on Bankruptcy, PP 60.71, 60.73 (14th ed.). This objective can only be achieved by making section 60e the exclusive remedy for stockbrokers' bankruptcies.
 
 
 16
 Levine contends, however, that Congress could not have intended section 60e to defeat her claim if the claim were valid under state law. She argues that if New Jersey law recognizes the Marion County bonds as her property and permits reclamation, then to transfer the property to the trustee in bankruptcy under section 60e would constitute a deprivation of property without due process of law. Pursuant to the principle of avoiding constitutional adjudications, it becomes necessary for us to determine whether under New Jersey law the bonds would belong to Levine. See New York Transit Authority v. Beazer, --- U.S. ----, ----, 99 S.Ct. 1355, 59 L.Ed.2d 507 (1979). Because we conclude that the bonds do not belong to Levine under New Jersey law, it is unnecessary for us to decide the constitutional question.
 
 
 17
 The relevant statute, N.J.Stat.Ann. § 12A:8-301 (Uniform Commercial Code § 8-301), provides: "Upon delivery of a security the purchaser acquires the rights in the security which his transferor had or had actual authority to convey . . . ." The parties agree that whether "delivery" took place is the controlling question. New Jersey law sets forth that delivery to a purchaser occurs when:
 
 
 18
 (a) he or a person designated by him acquires possession of a security; or
 
 
 19
 (b) his broker acquires possession of a security specially indorsed to or issued in the name of the purchaser; or
 
 
 20
 (c) his broker sends him confirmation of the purchase and also by book entry or otherwise identifies a specific security in the broker's possession as belonging to the purchaser; or
 
 
 21
 (d) with respect to an identified security to be delivered while still in the possession of a third person when that person acknowledges that he holds for purchaser; or
 
 
 22
 (e) appropriate entries on the books of a clearing corporation are made under 12A:8-320.
 
 
 23
 N.J.Stat.Ann. § 12A:8-313.
 
 
 24
 Levine contends that delivery has taken place under either (a) or (c) of the statute. We believe, however, that the delivery requirement was not satisfied under any of the provisions. For delivery to take place under section 8-313(1) (a), the purchaser or her designee must obtain actual physical possession of the security. See Kaufman v. Diversified Industries, Inc., 460 F.2d 1331, 1334 (2d Cir.), Cert. denied, 409 U.S. 1038, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972); Matthysse v. Securities Processing Services, Inc., 444 F.Supp. 1009, 1017 (S.D.N.Y.1977). The only party to have had actual physical possession of the bonds in this case was SPS, but it was neither the purchaser nor her designee.
 
 
 25
 There are three elements to be met to establish delivery under section 8-313(1)(c): (1) the broker sends confirmation of the purchase; (2) the broker by book entry or otherwise identifies a specific security as belonging to the purchaser; and (3) the security is in the broker's possession. Paragon satisfied the first element Levine received confirmation of her purchase in March 1973. The critical absence of the second element (identification of the specific security), however, prevents the establishment of delivery in this case under section 8-313(1)(c).
 
 
 26
 We leave for later discussion of section 60e the basis for our conclusion that the Marion County bonds were not sufficiently identified under the New Jersey statute. We believe that the identification requirement under New Jersey law and section 60e is substantially the same. Support for this position can be found in the New Jersey Study Comments following the statutory provision:
 
 
 27
 A difficulty exists, of course, where the broker goes bankrupt and there are insufficient securities in fungible bulk to satisfy all outstanding claims. . . . It is in such a situation that priority will be established according to Section 8-313(1). If there be no specified security in the hands of the broker, the creditor customers will share Pro rata in the fungible bulk, which will not be part of the bankrupt's assets; (Section 8-313(2) and Section 60(e) Bankruptcy Act) claiming any deficits as general creditors.
 
 
 28
 We conclude that New Jersey law would not convey ownership of the bonds to Levine and therefore does not conflict with section 60e. Because there is no constitutional impediment to applying the Bankruptcy Act in this case, we reject Levine's argument that Congress did not intend section 60e to apply.
 
 III.
 
 29
 Having decided that section 60e is applicable, we must determine whether Levine is entitled to reclamation under this provision. Section 60e(2) allows reclamation by those "cash customers who are able to identify specifically their property in the manner prescribed in paragraph (4) of this subdivision." 11 U.S.C. § 96(e)(2) (1976). The bankruptcy judge found, and the parties agree, that Levine was a cash customer. She is thus entitled to reclamation if she can identify her specific bonds in accordance with section 60e(4).
 
 
 30
 Section 60e(4) provides that securities are specifically identifiable if:
 
 
 31
 (1) they remained in their identical form in the stockbroker's possession until the date of bankruptcy; Or
 
 
 32
 (2) they were allocated to or physically set aside for a cash customer either
 
 
 33
 (a) more than four months before bankruptcy; or
 
 
 34
 (b) at a time while the stockbroker was still solvent; and remained so allocated or set aside at the date of bankruptcy.
 
 
 35
 11 U.S.C. § 96(e)(4) (1976). Levine claims that she has satisfied both of the tests although only one is needed to allow reclamation.
 
 
 36
 The first test requires that the bonds remain in their identical form in the stockbroker's possession until the date of bankruptcy. The Marion County bonds purchased by Levine were part of a bulk acquisition by Paragon of $150,000 worth of bonds of the same description. These bearer bonds were received by SPS on June 6, 1973, and placed in the "98" (general inventory) account. The bonds remained in that account until the date of bankruptcy. It appears that when SPS liquidated a portion of the general inventory account all but $30,000 of these Marion County bonds were sold.
 
 
 37
 We believe that these facts fail to satisfy the first test under section 60e(4) because of the requirement that the bonds be in the stockbroker's possession.[3] Levine contends that possession by SPS is sufficient to constitute constructive possession by Paragon and relies on Matthysse v. Securities Processing Services, Inc., 444 F.Supp. 1009, 1018-20 (S.D.N.Y.1977), in support of her contention. Matthysse was a Paragon customer whose bonds were among those sold by SPS from the general inventory account. He sued SPS for conversion and the district court found it necessary to determine whether possession by SPS constituted constructive possession by Paragon for the purposes of applying section 8-313(1)(c) of the Uniform Commercial Code. The court held that it was sufficient "by virtue of (Paragon's) contractual relationship with SPS which held the bonds on behalf of Paragon as its clearing agent and subject to its directions." Id. at 1018.
 
 
 38
 We are unconvinced that "in the stockbroker's possession" under section 8-313(1)(c) should necessarily be defined the same way for the purposes of construing section 60e. Congress intended the provisions concerning specific identification to be strictly construed in order to further the purpose of providing equal treatment of brokerage house customers. See Securities and Exchange Commission v. First Securities Company of Chicago,507 F.2d 417, 420 (7th Cir. 1974); In re McMillan, Rapp & Co., supra, 123 F.2d at 431; Harvard Note, supra, 1302-03. Furthermore, the court in Matthysse appeared to ignore the security interest SPS held in the bonds in the general inventory account. This lien severely limited Paragon's ability to control the bonds. Thus, under the first test of section 60e(4), the bonds were not in their "identical form in the stockbroker's possession."
 
 
 39
 In order to prove specific identification under the second test, Levine must show that the bonds were allocated to or physically set aside for her either four months prior to bankruptcy or at a time while Paragon was solvent and that they remained so allocated until bankruptcy. Because the bonds were received by SPS on June 6, 1973, and bankruptcy occurred on August 1, 1973, Levine fails to satisfy the four month requirement. It is therefore necessary that she prove that Paragon was solvent at a time while the bonds were allocated to or physically set aside for her. However, the bankruptcy judge made no finding concerning the date of Paragon's insolvency. For the purposes of this appeal we will assume that Paragon was solvent on June 6, 1973, the date SPS received the bonds. We believe, however, that Levine has failed to prove that Paragon or SPS ever allocated or physically set aside the bonds for her prior to bankruptcy.
 
 
 40
 Levine makes no claim that the bonds were physically set aside for her prior to bankruptcy; rather she relies on the contention that the bonds were allocated to her. This reliance is essentially predicated upon the evidence that after SPS had liquidated much of Paragon's general inventory account, $30,000 of Marion County bonds remained fitting the exact description of those purchased by Levine. Furthermore, Paragon had previously listed on its computer printouts $30,000 of Marion County bonds as assigned to Levine. These records, however, did not reflect any certificate numbers. In addition, at no time prior to bankruptcy did SPS specifically allocate or otherwise earmark certain bonds for Levine. SPS did allocate bonds in this manner for those customers whose securities were held in safekeeping. "By way of corroboration" of her contention, Levine points to the specific exclusion at the request of the trustee of bonds identical to those in this proceeding from the application for distribution and liquidation of the bonds then held by Paragon. This treatment, however, was only an exercise of prudence by the trustee while the bonds were subject to Levine's claim for reclamation and in no way supports the contention that the bonds were allocated prior to bankruptcy.
 
 
 41
 We conclude that the bankruptcy judge was correct in holding that this evidence was insufficient to satisfy the requirements of section 60e(4). That the exact amount of bonds fitting the description of the bonds claimed by Levine remained in the general inventory account was merely a fortuitous happenstance unrelated to the purposes of section 60e. These bonds were not specifically identified for Levine as required by the Act. Although we sympathize with Levine's plight, we must recognize that there are others like her who have been thrust into a similar predicament of paying in full for bonds but not receiving them. Congress intended that each member of this class receive equal treatment under the law. SPS's arbitrary decision not to sell the $30,000 of Marion County bonds should not be a basis for giving Levine a preference over other cash customers whose bonds were sold and must now share in a single and separate fund.[4] To reclaim property held by the trustee of an insolvent stockbroker, a customer must demonstrate that his property has met the strict requirements of specific identification under the Act, thereby justifying preferred treatment over other customers subject to losses from the bankruptcy. This Levine has been unable to do.
 
 IV.
 
 42
 Levine also appeals from an order of the bankruptcy judge concerning modification of the interest payment schedule of the Marion County bonds. On November 29, 1977, the trustee applied to the bankruptcy court for permission to send a letter authorizing modification of the payment schedule of all Marion bonds held by the trustee. On December 1, 1977, Levine filed a motion requesting a stay of the trustee's application pending disposition of Levine's appeal of the reclamation proceeding. The bankruptcy judge authorized the trustee to send the letter concerning all of the Marion County bonds except those claimed by Levine. The trustee was ordered to take no action regarding those bonds without the express written consent of Levine's attorneys.
 
 
 43
 Levine appealed that order to the district court which affirmed. Levine has now appealed to this court claiming that the trustee, not Levine's attorney, must make the decision concerning modification of the payment schedule. In view of Levine's motion to stay, we believe that the action of the bankruptcy judge was eminently reasonable.
 
 V.
 
 44
 The orders of the district court affirming the judgment and order of the bankruptcy judge will be affirmed. Each party will bear its own costs.
 
 
 
 [1]
 This section, along with the entire bankruptcy code, has been superseded by Act of Nov. 6, 1978, Pub.L.No.95-598, 92 Stat. 2549 (to be codified in 11 U.S.C. §§ 101, Et seq.). The provisions concerning stockbroker bankruptcies appear in the new act at 11 U.S.C.A. §§ 741-752 (1979). The new law is effective October 1, 1979, and does not affect this appeal
 
 
 [2]
 See Note, Protection of the Accounts of Stockbrokerage Customers, 77 Harv.L.Rev. 1290, 1301 (1964). This definition appears in the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(4) (1976) and the new Bankruptcy Act, 11 U.S.C.A. § 101(39) (1979)
 
 
 [3]
 It also appears that the requirement that the bonds remain in their identical form has not been met. According to Collier:
 When securities are placed in bulk segregation, whatever right a cash customer may have had to a particular certificate terminates. In exchange, therefor, he acquires an undivided interest, pro tanto, in the segregated mass. Consequently, He can not reclaim any portion of that mass on a theory that his original property has remained in its "identical form," within the meaning of paragraph (4). He may only lay claim to that mass as, pro tanto, representing the proceeds of, or substitutes for, his property.
 
 
 [3]
 Collier on Bankruptcy P 60.74(2) (14th ed.) (emphasis supplied). Although Collier appears to be referring to securities originally earmarked for a customer and then placed in bulk segregation, the consequences should be the same where, as here, the securities are in bulk segregation from the beginning. See In re McMillan, Rapp & Co., supra, 123 F.2d at 430 (requires certificates to be in the name of purchaser to be reclaimable under this provision)
 
 
 [4]
 The congressional purpose behind section 60e has been recognized in this circuit: "This inequality among claimants of the same status had long been noted and the need for its correction had been the subject of considered comment. It was to remedy this inequity that Congress inserted Section 60, sub. e into the bankruptcy law with the enactment of the Chandler Act. In re McMillan, Rapp & Co., 123 F.2d 428, 431 (3d Cir. 1941)